JAMES E. ROOT *v.* WM. D. COLLINS *et als.*

*Chancery. Mortgage. Marshalling. Notice.*

When premises incumbered by mortgage are sold by the mortgagor in separate parcels to several purchasers, as between the purchasers the several parcels shall be charged with the burden of the mortgage in the inverse order of the time of alienation.

A parol sale of a part of mortgaged premises, followed by possession and improvements on the same by the vendee, is sufficient, as between the vendee and the mortgagor and those claiming under him, having actual notice of the parol sale, to throw the burden of the mortgage upon the part of the premises retained by the mortgagor.

And when a purchaser of the part of the premises retained by the mortgagor had no notice of the parol sale of the other part, but he purchased it as agent and held it in trust for another person who did have actual notice at the time of the purchase, *held*, that the notice was sufficient and that the part so purchased subsequent to the parol sale of the other part, should be charged with the whole mortgage.

This was a bill to compel contribution towards a mortgage covering lands owned both by the orator and the defendant. The facts sufficiently appear in the opinion of the court. The chancellor dismissed the bill, from which decree the orator appealed.

*G. W. Harmon*, for the orator.

*N. B. Hall*, for the defendant.

PIERPOINT, J.   The pleadings and evidence in this case unquestionably call for the application of the rule, that when premises that are subject to a mortgage, are sold by the mortgagor in separate parcels to several purchasers, as between such purchasers the several parcels shall be charged with the burden of such mortgage, in the inverse order of the time of alienation. This rule was fully considered in the case of *Lyman* v. *Lyman & Briggs*, 32 Vt. 79, and was then for the first time in this state judicially recognized as law   It may now be regarded as the settled rule in this state.   Indeed no question is made as to its soundness, or its applicability, each party insisting upon the benefits of its application in their favor, upon the facts as they claim them to be established by the proof.

The proof shows that on the 2d of April 1849, Lucius H. Barber was the owner of the entire premises, in relation to which the questions in this case arise ; and that on that day he mortgaged the whole premises first to one Loomis, and then to Benj. F. Jacobs.

In 1850, Barber sold the north part of the premises by a verbal contract to Jno. S. Robinson, who agreed to pay the Jacobs mortgage as the consideration for the part purchased.   No deed was ever executed by Barber to Robinson, but Robinson immediately went into possession of the land purchased by him, plowed and sowed the land, cut the grass, and made preparation for erecting a building thereon, by digging a cellar, and drawing on lumber and stone for that purpose.   Robinson also paid interest for one or more years on the Jacobs mortgage, and continued in possession until the 22d of November 1852, when he quitclaimed his interest in said north half to Elihu H. Field, who agreed to pay the Jacobs mortgage.   Field immediately went into possession, erected buildings thereon, paid the Jacobs mortgage, and continued the possession until he sold out to the defendant Collins.

On the first of March 1853, Barber conveyed the north part to Field in pursuance to the agreement between Robinson and himself, and between Robinson and Field.   On the 21st day of April 1858, Field conveyed the same land to the defendant Collins, who subsequently sold it to the defendant Colvin.

As to the south part of said premises, it appears that on the 16th of July, 1852, Barber mortgaged the south part to Truman Huling, who, when he took his mortgage, had full knowledge of the contract between Barber and Robinson.

On the 22d of December, 1852, Barber sold and conveyed said south part to Leland Fairbanks, Jr., and on the 23d of March, 1855, Fairbanks conveyed the same to the orator.

On the 4th of December, 1854, Huling obtained a decree of foreclosure of his mortgage upon the south half of the land, and on the 1st of June, 1855, he assigned his decree and the premises to Jno. B. Gale, the partner of Fairbanks. This conveyance was made to Gale at the request of Fairbanks, and in pursuance of a contract for the purchase made by Fairbanks with Huling, and Fairbanks furnished the money to pay for it. On the 5th of June, 1855, Gale conveyed the same land to the orator.

On the 23d day of December, 1856, Loomis obtained a decree of foreclosure on his mortgage, covering the whole premises, against the orator and others; and the orator redeemed, and has brought this bill to compel the defendants to refund to him the money he paid for such purpose, or such proportion thereof as shall be adjudged equitable.

From this general statement it is apparent that the principal questions on which the case depends must arise upon the facts as they shall be found to exist, in relation to the verbal contract between Barber and Robinson, as to the sale of the north half, and the knowledge thereof by those who subsequently purchased the south half, and the effect that is to be given thereto between the parties to this bill. The contract between Barber and Robinson, being a parol one, was, of course, wholly inoperative under the statute. But Barber surrendered the possession to Robinson under that contract, and Robinson took and continued the possession, exercising acts of ownership, claiming title to it, making preparation for the erection of buildings, and paying a part of the consideration agreed to be paid. This we think constituted such a part performance of the contract that a court of equity would, as between those parties, have decreed and compelled a specific performance of it. If so then it is equally clear that Robinson would have had the right in equity, to insist, as

between himself and Barber, that the south half of the premises should bear the burden of the Loomis mortgage.

Such being the right of Robinson, any third party who should purchase the south half of Barber, with a knowledge of the equities between him and Robinson would stand in no better position than Barber.

That Huling had full knowledge on this point, when he took his mortgage, is conceded. From all the testimony, we are satisfied that at the time Fairbanks took his deed from Barber, he was informed by Barber of the true state of the transaction between himself and Robinson and Field. Barber expressly swears that such was the fact, and although Fairbanks says he did not have such information until a subsequent period, we think he is mistaken as to the time when Barber first communicated the facts to him, and that he purchased with actual knowledge of the true state of the equities then existing between Barber Robinson and Field.

These facts dispose of all the questions that have been discussed as to constructive notice, so far as these persons are concerned. But there is no satisfactory evidence to show that Gale, at the time he took the assignment of Huling's interest, or that the orator, at the time he took his deed from Fairbanks, or when he took his deed from Gale, had actual notice of the equitable rights of Robinson or Field. It therefore becomes important to inquire into the position which the orator actually occupies in relation to the property, and to ascertain what interest he has in it, and what, in view of the whole transaction, his equitable rights really are.

The transfer of Huling's interest to Gale, the partner of Fairbanks, and from Gale to the orator, must in equity be regarded as the act of Fairbanks, and have the same effect as though the title had passed through him instead of Gale. It appears from the testimony of the three, that Fairbanks made the contract for the purchase with Huling, furnished the money to pay for it, directed the transfer to Gale, and three days thereafter directed Gale to transfer it to the orator, which he did. No consideration passed from or to Gale in the transaction. He was the mere instrument through which Fairbanks transferred the right

from Huling to the orator, and Gale's name seems to have been used for no apparent reason except that Fairbanks' connection with the transaction might not appear on the face of the papers.

How then stands the orator as between himself and Fairbanks? Is he to be regarded as a *bona fide* purchaser of the property, for value, or merely as the holder of the legal title, as the friend and agent, and for the benefit of Fairbanks. From his own testimony, we find it difficult to resist the conclusion that he has never regarded himself as the real owner of the property. He states that he entertains a strong friendship for Fairbanks, who asked him to take this property, and that he purchased it, not because he wanted it, but solely because Fairbanks wished him to buy it; that he knew nothing about the property before, and took no pains to ascertain its value, or locality. He seems to have taken little or no interest in it since. He says that this proceeding was instituted without his consent or knowledge, and is prosecuted not for his benefit, but that he expects to be indemnified against all losses resulting from it. From other testimony it appears that Fairbanks was the active party in commencing and conducting the suit, and from all the testimony we are satisfied he is the real party in interest, and the only one that would be benefited by a decree for the orator, and that the property was transferred to the orator in the hope, that by a suit in his name, the effect of Fairbanks' knowledge of the true state of the equities between all the persons interested, might be avoided, and a decree obtained in favor of the orator, compelling the defendants to pay the Loomis mortgage, or lose part of the premises, when such a decree as between Fairbanks and the defendants would be clearly inequitable.

In this view of the case, without stopping to examine the circumstances tending to show constructive notice to the orator of the state of the equities we are clearly of the opinion that the decree of the chancellor dismissing the bill should be affirmed, and the case remanded.