EDWARD H. SCOTT *v.* HENRY PATCHIN, LYDIA P. PATCHIN, SETH B. HUNT, GILES B. KELLOGG, HULL CHANDLER, SAMUEL C. LYONS AND RHODA LYONS, EXECUTORS OF THE WILL OF LAFAYETTE LYONS, LOUIS DE GOESBRIAND, JOHN N. SQUIRES, BENJAMIN R. SEARS, TARRANT SIBLEY, CHARLES R. SANFORD, LYDIA S. WATERS, ADELINE H. WATERS, MARY J. WATERS, LYMAN S. PATCHIN, BENNINGTON MANUFACTURING CO., S. S. & M. FISHER.

[IN CHANCERY.]

*Will.   Legacy charged on Real Estate.   Will recorded Constructive Notice to Purchasers that the land is charged with Payment of Legacy.   Surety.   Subrogation, where several Purchasers last one to redeem.*

A residuary legatee received real and personal estate, which, by virtue of the will, was charged with the payment of a legacy to the orator. He never paid the legacy; and, after disposing of the personal property and selling the several parcels of real estate, at different times, to some of the defendants, he became insolvent. The will was legally recorded in the records of the Probate Court and the town where the property in dispute was mostly situated. On a bill being brought, *Held,*

1. That the residuary legatee took only an equity of redemption; that the record of the will was constructive notice of his limited title; that his grantees, though *bona fide* purchasers for full value, received only his interest burdened with the orator's legacy; that in equity the result is the same, though there has been no decree of the Probate Court; and that there were no laches in bringing the suit.

2. That the last purchaser must first redeem, and so on, in the inverse order of alienation.

3. That the purchasers had no claim against the surety on the probate bond, as there was no privity of contract between them; and the surety would be subrogated to all the rights of the orator, if he were compelled to pay.

4. The value of the land should be fixed at the time when the first installment of the orator's legacy became due.

5. Payment of the orator's legacy was not a condition precedent to the vesting of the property.

6. The defendants were all properly joined. Their ceasing to have any interest in the matter is only a good reason for allowing them to retire without costs.

HEARD at the December Term, 1879, Bennington County, on the pleadings and an agreed statement. DUNTON, Chancellor, or-

dered, *pro forma*, that the bill be dismissed. It was agreed, among other things :

That the orator is a son of S. S. Scott, and a grandson of the testator, Lyman Patchin, late of Bennington, and nephew of Henry and Lyman S. Patchin ; that Lyman died August 16, 1857 ; that he left a will which was admitted to probate October 7, 1857, by the Probate Court for the district of Bennington ; that Henry Patchin was appointed executor ; that he was residuary legatee ; that the will was duly recorded in the office of the town clerk of Bennington ; that this suit was brought for the benefit of Lyman S. Patchin ; that the orator is the E. H. Scott to whom the legacy of $3000, payable in annual installments of $500 per year, after he reached the age of twenty-one years, was given. He became twenty-one April 27, 1872. No part of said legacy has been paid. Two $500 installments were due when this suit was brought ; all have since become due. Henry Patchin became insolvent April 1st, 1873, and has never since been able to pay orator's legacy. He was possessed of sufficient attachable personal property, when the first $500 became due, so that its collection might have been enforced up to the time of his said insolvency. Payment of the installments due when suit was brought, was duly demanded of both Henry and Lyman S. Patchin.

Henry Patchin, as executor and residuary legatee, took possession of all the personal estate of the said Lyman Patchin, and of such real estate as was not specifically devised to others. Up to the time, or about the time, of his insolvency, he was a man in good repute, and was generally regarded as a man of wealth. The personal estate which came into his hands as residuary legatee, would, had it been applied for that purpose, have been ample for the payment of the debts and legacies. He paid all his father's debts, but left this and some other legacies unpaid.

It is stipulated that such a bond as is described in said record was in fact executed, and placed on file in the Probate Court for the district of Bennington. What has become of it no one knows. Diligent search among the files and records of said court, fails to discover any other or further traces of its existence. The court house and probate office at Bennington were burned in 1869, and a portion of the files of the Probate Court destroyed. Said Lyman S. Patchin signed said bond, as surety, at the request and for the accommodation of his brother, the said Henry Patchin. He never received any indemnity or security for signing said bond.

Said Lyman S. Patchin resided in Bennington at the time he signed said bond, and has ever since resided there. He has, since he signed said bond, been solvent, and is now possessed of

sufficient property so that the orator might enforce payment of his said legacy against him.

That, before this suit was brought, the said Henry Patchin sold and conveyed all the real estate devised to him by his said father, which was located in the States of New York and Michigan, pursuant to authority duly conferred upon him by the surrogate and probate courts of said States; that he had also sold and transferred all the bank stocks in the city of Troy, and had appropriated the proceeds to his own use.

That the said Henry Patchin, at the dates and in the manner hereinafter stated, sold or encumbered the lands devised to him by the said Lyman Patchin. All said lands are located in said town of Bennington, and the various conveyances and liens cover and embrace *all* the lands which passed to the said Henry Patchin, under the residuary clause of said will, in the State of Vermont, except the lands in Pownal, to which no title was obtained.

On the 5th day of October, 1863, the said Henry Patchin sold and conveyed to L. Lyons, by deed of warranty in the usual form, and with the usual covenants, a tract of about fifty acres, more or less, of woodland. The amount paid to said Patchin for said tract of woodland was $3,850. This sum was in fact paid by Hull Chandler, who was the equitable owner of said lands while title was in said Lyons, and who has since obtained the legal title by deed of quit-claim from said L. Lyons in his lifetime. Said tract was bargained to said Chandler by said Henry Patchin. L. Lyons signed the notes of Chandler to the full amount of the purchase-money. In order to secure said Lyons for the liability assumed by him, the conveyance of said woodland was made to him. Chandler took possession, and proceeded to cut and remove the wood and timber on said lands, as it was expected he would do when he bargained for the property. When he had paid to Henry Patchin the sum of $3,850, and interest, and taken up the notes which were signed by said Lyons, the latter conveyed said land by quit-claim. Lyons never had the actual possession of said lands, and had no other interest in them than as herein stated.

S. C. Lyons and Rhoda Lyons, executors of L. Lyons, in their answers to orator's bill, "disclaim all claim, title or interest to said premises and every part thereof, and say they ought not to have been joined as party defendants in this suit." Said Chandler, in his answer, admits the conveyance by Patchin to Lyons, and by Lyons to him, of the lands above described, and that they are a part of the lands above described, and that they are a part of the lands which came to said Patchin by his father's will. He denies any actual notice of said will, but says, "At the

time this defendant purchased and received a deed of said land, he had no knowledge whatever that the said Henry Patchin so acquired title to said premises, or that the said Lyman Patchin died leaving any will."

On the 9th day of February, 1864, said Henry Patchin, in consideration of $1300, sold and conveyed another portion of said lands, by deed of warranty, to Seth B. Hunt; and on the 28th day of December, 1865, for the further consideration of $1300 more, he sold another tract of said lands to said Seth B. Hunt, and gave him a deed of warranty thereof. The larger portion of said lands so conveyed as aforesaid are still owned by said Hunt. A small portion thereof were afterwards conveyed by him, and have passed through the Bennington Manuf. Co., and are now owned by defendants S. S. Fisher and M. Fisher, who acquired their title on the 22d day of May, 1874, by deed of warranty.

On the first day of April, 1874, said Henry Patchin, by deed of warranty, for the consideration of $600, sold and conveyed to defendant G. B. Kellogg that portion of said lands called the " Church Place, in the south part of the centre village," except a small portion thereof, which said Patchin, on the 3d day of March, 1868, sold and conveyed by deed of warranty to L. S. Waters A. H. Waters and M. J. Waters, defendants. Said grantees are all in possession.

On the 14th day of April, 1868, said H. Patchin, by deed of warranty, for the consideration of $3200, sold and conveyed to D. A. Ryan, of Bennington, ten and one half acres of the lands so devised to him by his said father as aforesaid. Said lands were afterwards, and before this suit was brought, duly conveyed, together with other lands of no importance in this controversy, by the said Ryan, to Louis De Goesbriand, the Roman Catholic Bishop of the Diocese of Vermont, who is now in possession, claiming title thereto.

On the 24th day of February, 1873, said Henry Patchin, joined by Lydia P. Patchin, his wife, mortgaged to J. N. Squires, defendant, for the purpose of securing the sum of five thousand dollars, another portion of said lands, described in said will as " the house, brick store, outhouses and lot, situated in the center village of Bennington, Vt., where I now live." Since this suit was brought, the said J. N. Squires has foreclosed said mortgage, and the title has become absolute in him, as against said Henry Patchin. On or about the first day of May, 1877, the house and brick store standing on said lot, and which constituted its principal value, were destroyed by fire.

On the first day of April, 1873, said Henry Patchin mortgaged

to B. R. Sears, to secure the sum of three thousand dollars, that portion of said lands described in said will as " the land I own on the east side of the road going north from the center village aforesaid, and near to W. · Montague's, of about thirty acres." Said Sears has since foreclosed said mortgage, and the title to said lands has become absolute in him, as against said Patchin.

On the second day of June, 1873, said Henry Patchin, for the consideration of two thousand dollars, gave to defendant T. Sibley a mortgage of all the lands which came to him from his said father which he then held and had not conveyed. At the time this suit was brought, said Sibley claimed said lands as mortgagee. Since said suit was brought, such interest as the said Sibley then had has been extinguished by the foreclosure of prior mortgages, and said Sibley has now no personal interest in any of the lands so devised by said Lyman Patchin to said Henry Patchin as aforesaid.

It is further stipulated that C. R. Sanford, a judgment creditor of the said Henry Patchin, on the 20th day of January, 1874, levied an execution in his favor, amounting to four hundred ninety-two dollars and ninety cents, upon a portion of the lands devised to the said Henry Patchin as aforesaid, and whatever title to said lands the said Henry Patchin then had, has duly passed to the said C. R. Sanford.

None of the defendants herein named had actual notice of the contents of the will of the said Lyman Patchin, except Henry Patchin, L. P. Patchin and L. S. Patchin. They all had such constructive notice as grows out of the fact that said will was regularly recorded in the land records in the office of the town clerk of Bennington, and in the records of the Probate Court for the district of Bennington. The several defendants who claim the lands in controversy, under said Henry Patchin, acted in good faith in all they did in respect to acquiring title, without any purpose to defraud or defeat the orator or L. S. Patchin of any right appertaining to them, or either of them, and were each and all *bona fide* purchasers for full value.

Samuel S. Scott, father of the orator, was his guardian during his minority. Neither the orator or his guardian ever took any steps to prevent the sale of said lands by the said Henry Patchin. They were not consulted or advised with in respect to said sales or mortgages by the said Henry Patchin ; they had no knowledge, in fact, of such transactions, save what they learned from common talk or rumor, and such constructive notice as would arise from the fact that said conveyances were duly recorded.

L. S. Patchin never made any objection to the said Henry

17

Patchin's management or conduct with the property so devised and bequeathed as aforesaid. He was not consulted or advised with by said Henry Patchin as to any of his business. He had no knowledge of any of said deeds or mortgages until after the transactions. He supposed and believed, up to the time of the said Henry Patchin's failure, on or about April 1st, 1873, that he was entirely solvent.'

The prayer of the orator's bill is that the " defendants may be decreed to pay to your orator the installments of said legacy which have now become due, and secure to your orator the payment of such installments thereof as may hereafter become due, and that, if need be, one of the masters of this honorable court may be appointed to ascertain the proportions or sums which each of the above named grantees, mortgagees and levying creditors should be compelled to pay of your orator's said legacy ; and that, in default of payment by the said Henry Patchin, his grantees, mortgagees and levying creditor of your orator's said legacy, that your orator may be decreed the possession of all and singular the lands within the jurisdiction of this honorable court which were, by the will of said Lyman Patchin, made chargeable with the payment of your orator's said legacy.

The following clauses were in the will:

" I give and bequeath to my grandson, Edward H. Scott, son of my late daughter Maria, and late wife of Samuel S. Scott, the house and lot called the Bank house, in the center village of Bennington where the said Samuel S. Scott now lives, provided the said Edward H. lives till he is twenty-one years old, and the arrangement and the agreement entered into by me and the said Samuel S. Scott on the twenty-seventh day of April, A. D. 1852, is carried out by the said Samuel S., relating to the said Bank house and lot ; and it is my will that my executor or administrator should carry out that agreement made and entered into by me and S. S. Scott, reference being had to the said agreement for particulars."

.    .    .    .   " I also give to said Edward H. $3,000, in money, to be paid to him in $500 installments each year after he is twenty-one years old," &c.

.    .    .    .    .    .    .    .

" I give and bequeath to my son, Henry Patchin, of Bennington, Vt., all the residue of my estate, both real and personal estate, wherever situated and of whatever description, on the following terms and conditions: By his paying, out of the real and personal estate designated to him, the aforesaid legacies, and

carrying out an fulfilling all the agreements that I am legally bound to do, and see to the maintaining of Dorcas Squires if she is alive and living with me at my decease."

Large amounts were given to other parties.

*James B. Meacham*, for the orator.

The orator claims that his legacy should be paid either by the purchasers of the lands owned by his grandfather, charged with the payment, or by Lyman S. Patchin, surety on the bond of Henry Patchin, executor.

*Davenport & Eddy*, for the defendant, Lyman S. Patchin.

The agreed statement shows that this suit is prosecuted for the benefit of Lyman S. Patchin. No title vested in Henry Patchin until the conditions of the will were complied with; without this he had no title to the real estate and could convey none to his purchasers. The record of the will in the town clerk's office was constructive notice to all of his want of title. Jarmin on Wills, 1, 683; Redf. on Wills, 2, 662, 685–6; *Dunbar* v. *Dunbar*, 3 Vt. 472; *Ashley* v. *Burrell*, 48 Vt. 488; 14 N. H. 564–5. He could not convey what he did not own. 3 Vt. 472; 2 Conn. 196. The payment of the legacy was a charge on the real estate; and the defendants took it thus charged *cum onere*. 36 Vt. 210; 43 Vt. 403. The testator had a right to determine out of what fund the orator's legacy should be paid. 1 Lead. Cas. Eq. 505; Redf. on Wills, 2, 877, 117; 9 Gratt. 541; 4 Term, 625. If Lyman S. Patchin had been sued on the probate bond and compelled to pay the orator's legacy, his relation as surety would have entitled him to be subrogated to the orator's rights, and to enforce his liens and priorities on these lands. 2 Lead. Cas. Eq. 226, 229, (Hare & Wallace's notes to *Deering* v. *Earl of Winchelsea*); De Colyer on Prin. and Surety, 330; 18 Vt. 77; 40 Vt. 581; 17 Ves. 514; 29 Gratt. 494. Non-payment of a *legacy* is not a breach of probate bond. 3 N. H. 288; 14 N. H. 551.

*Gardner & Harman* and *T. Sibley*, for the other defendants.

The orator has alleged no decree of the Probate Court entitling him to payment. 42 Vt. 330. The personal estate should be *first* resorted to for payment of the legacy. Perry on Trusts, 2, ss. 568, 571, 574; Ib. 1, s. 462. The real estate is only to be resorted to in aid of the personal. Perry on Trusts, s. 571; 14 N. H. 564; 24 N. J. Eq. 588; *Stevens* v. *Gregg*, 10 G. & J. 143; 2 Johns. Ch. 614; 1 N. Y. 120. The personal estate cannot be exempted from the payment of debts and legacies without express words, or at the least, a plain intention or a necessary implication. See Lord Eldon's remark in *Gittings* v. *Steele*, 1 Swanst. 28; *Seaver* v. *Lewis*, 14 Mass. 83; *Canfield* v. *Bostwick*, 21 Conn. 550; *Hoes* v. *Van Hoesen*, 1 N. Y. 120. It is not sufficient that the testator charge the real, but he must show that his purpose is that the personal shall *not* be applied. *Ruston* v. *Ruston*, 2 Yeates, 65, 66.

The same statutes which conferred upon Lyman Patchin the right to dispose of his property by will, provided, also, that his executor might substitute exactly such a bond for the real and personal property on which this legacy was a charge. Gen. Sts., ch. 49, s. 1; ch. 50, s. 3; *Stevens* v. *Gregg*, 10 G. & J. 147. And at least until the orator has exhausted his remedy on that bond, he cannot claim anything of these defendants. *Richardson* v. *Morton*, 1 Eng. Rep. 611; *Chapin* v. *Waters*, 116 Mass. 140; *Jackson* v. *Harris*, 8 Johns. 141; *Jackson* v. *Bull*, 10 Johns. 152; *Kelsey* v. *Deyo*, 3 Cow. 133; *Tole* v. *Hardy*, 6 Cow. 333; *Harris* v. *Fly*, 7 Paige, 421; *Powell* v. *Murray*, 10 Paige, 256; 72 N. Y. 322.

If the legacy could be paid out of no fund or estate except Lyman Patchin's lands, then it was payable out of the *first* lands sold; and these were in New York and Michigan. *Ormerod* v. *Hardman*, 5 Ves., Jr., 736. If trustees waste a fund raised out of the real estate to pay debts and legacies, or if executors waste a fund out of the personal estate, the real estate in the one case is not to be charged with a burden which it has borne once. Ch. KENT, in 2 Johns. Ch. 628; see *Richardson* v. *Morton*, 13 Eq. Cas. 123.

The opinion of the court was delivered by

Ross, J. The right of the orator to maintain his bill against Henry Patchin and his grantees of real estate which Henry Patchin took by the devise of his father, Lyman Patchin, is conceded, as it must be. The legacy to the orator was clearly made a charge upon the property given to Henry Patchin by the will of Lyman Patchin. We do not think that the payment of the orator's and other legacies and debts charged thereon, was a condition precedent to the property vesting in Henry Patchin. The fact that the legacies and debts charged thereon were to be paid out of the property bequeathed to Henry Patchin, as well as the fact that the orator's legacy was not payable for several years after the decease of the testator, and then only on condition that the orator survived to attain his majority, is inconsistent with such holding. Henry Patchin could not pay the legacies charged thereon " out of the real and personal estate designated to him," if he took no title to any portion of it until he had first paid such legacies and charges; neither could it have been the intention of the testator that he should retain the identical personal estate received under the will, for fifteen years, the earliest time at which he could discharge the first installment of the orator's legacy. Hence the property, both real and personal, received by Henry Patchin under the bequest, was charged with the payment of the orator's and other legacies, and the performance of the duties therein specified. It must also be conceded that the defendants, who are grantees of Henry Patchin of real estate so charged by the will of Lyman Patchin, took the same affected with notice of the charge. The will, having been duly probated and recorded, was constructive notice of its contents to all who purchased from Henry Patchin; so that, as regards the orator, they took the same subject to his rights to have his legacy, as it became due from time to time, paid out of such property. Though purchasers for value, they were purchasers with notice of the equities of the orator in such estate.

By the will, the orator's legacy was charged as much upon the real estate as upon the personal estate designated to Henry Patchin. Whatever might have been the rights of the purchasers

of the real estate to have had the personal estate first exhausted to discharge the legacies charged on both, against Henry Patchin, if he had retained the title of the personal property, they have no such right against the orator. The right of the orator to have, hold and enforce payment from all and every portion of the security furnished him by his grandfather, the testator, cannot be taken away nor diminished by the manner in which such purchasers and Henry Patchin have dealt, as between themselves, with such security when affected with notice of his paramount rights thereto. Neither has the orator been guilty of any such laches in enforcing his rights against Henry Patchin as will discharge the real estate purchased from him from the payment of his legacy. On the agreed case they knew as much as he did in regard to the pecuniary circumstances of Henry Patchin, down to the time he became insolvent in 1873. Having notice of the orator's right to enforce payment of his legacy out of the property they were purchasing, it was their duty, and not the orator's, to forefend themselves against any ultimate loss which might result to themselves by the failure and insolvency of Henry Patchin. They were relying upon the covenants of warranty of Henry Patchin, and it behooved them to see to it that he was able to answer pecuniarily and make good his covenants.

Neither is it seriously contested that the orator has the right to enforce payment of his legacy from Lyman S. Patchin as the surety of Henry Patchin on the bond given to the Probate Court for the payment of the debts and legacies of the testator, Henry Patchin being the residuary legatee under the will. In such a case, by the bond, the executor and residuary legatee and his sureties agree to pay and discharge the debts and legacies of the testator; and the legatees have the right to enforce the payment of their legacies, in equity, at least, against the signers of the bond without first having obtained an order of the Probate Court for the payment of the same. Hence, on the agreed facts the orator has the right to enforce payment of his legacy from the owners of the real estate charged therewith by the will of the testator, or from the surety on the bond given to the Probate Court for the payment of the same.

The question in regard to which of these two securities for the payment of the orator's legacy, must ultimately respond thereto, as between the purchasers and owners of the real estate, and the surety on the bond, is not raised by the pleading ; but is fairly raised by the agreed facts.    Inasmuch as this question has been principally dwelt upon and elaborated in argument, and all the parties are before the court, and all desire it determined, although no cross-bill has been filed, and issue joined, between the defendants in this respect, we have concluded in this case, without making it a precedent for any future case, to treat the agreed case like a referee's report, and render such judgment thereon as this court might if the pleadings had been amended and enlarged, as they might have been, so as to include, and present, this question for adjudication.    In considering this question, it is helpful to keep in mind the precise legal relations, to these two securities for the payment of his legacy, of the orator, of the surety on the bond, and of the purchasers of the real estate charged, to Henry Patchin and to each other.    As regards the orator, the real estate is the primary security, the one provided by the testator.    Henry Patchin, by force of the will, took only so much of the real and personal estate designated to him therein, as remained after the payment of the orator's and other legacies charged thereon, or the equity of redemption therein.    The language of the will is, " on the following terms and conditions : By his paying out of the real and personal estate designated to him the aforesaid legacies," &c.

By accepting the property thus charged, it became the legal duty of Henry Patchin to pay the orator's legacy.    The property received by him was to respond to the payment of the legacy into whosesoever hands it might come with notice of the charge.    When the defendants, purchasers of the real estate so charged, took conveyance thereof from Henry Patchin affected, by the record of the will, with notice of its contents, they obtained only the rights of Henry Patchin therein, and hence received it burdened with the obligation to pay the orator's legacy.    In other words, they received property set apart by the testator for the payment of the orator's legacy in the first instance.    As between such pur-

chasers and Henry Patchin, it was his duty to pay the legacy, and they, severally, took his covenants warranting the title to their respective purchases to secure the discharge of this duty by him, and to forefend themselves against having their purchases respond to the payment of the orator's legacy. There is nothing in the agreed case tending to show that these purchasers relied at all upon Lyman S. Patchin to defend the title to the real estate purchased by them of Henry Patchin; or that any of them before making their respective purchases ever exchanged with Lyman S. one word on that subject; or that they ever knew that he was surety on the bond to the Probate Court. Hence, there is no privity of contract between these purchasers and Lyman S. Patchin; nor did they make their purchases, and part with their money therefor, relying on the fact that he was surety on the bond of Henry Patchin to the Probate Court.

The law has furnished to the orator, without any intervention or solicitation from him, the bond, signed by Lyman S. Patchin as surety, to Probate Court, as a second security for the payment of his legacy. By the terms of the bond Henry Patchin, as principal, and Lyman S. as his surety, agree to pay this and the other legacies, in consideration that Henry be released from returning to the Probate Court an inventory of the estate not specifically devised to others. As between them, it is the duty of Henry Patchin to pay the legacies and save Lyman S. harmless therefrom, the same as it is his duty to the purchasers of the real estate to save them from such payment.

Lyman S. received none of the property charged with the payment of the orator's legacy. He had constructive notice, at least, of the contents of the will, and, legally, is presumed to know, and probably did know, that the payment of the legacies, for which he became surety by the terms of the bond, was made a charge upon the property designated to Henry in the will. The legal presumption is that he signed the bond influenced by such knowledge. The payment of the legacy was already amply secured on the property, which has come to the purchasers, when he signed the bond. He therefore stands in the place and relation of a surety for the payment of a debt which is already amply secured

to the holder of the debt on other property. When such surety is compelled to pay the debt to the holder, he is entitled to be subrogated to the rights of the payee to any security which such payee may hold for the payment of the debt, and may enforce payment therefrom, both against the original debtor and against those who have succeeded to the rights of the original debtor in the security. Hence, as between the purchasers of the real estate charged with the payment of the orator's legacy and the surety on the bond, it is the legal duty of the former to pay the orator's legacy.

The next subject for consideration on the facts agreed upon, is the distribution of the legacy among the purchasers from Henry Patchin of the real estate charged with its payment. As before shown, Henry Patchin took but an equity of redemption in the property devised. The purchasers of the real estate from him took no more than he had in the same; that is, they severally purchased his right of redemption. If Henry Patchin had retained sufficient of the real estate received under the bequest to discharge the payment of the orator's legacy, it would be the duty of the court, as between Henry Patchin and such purchasers, to charge the payment of the whole legacy upon that part of the real estate retained by him. The real estate, in this State, charged with the payment of the orator's legacy, is all of the property included in the bequest that is now before the court. The purchasers thereof, as between themselves, severally took the right thereto which Henry Patchin had at the time of their respective purchases. Inasmuch as if Henry Patchin had retained any of the estate charged with the payment of the orator's legacy, it would have been the duty of the court, at the instance of purchasers with covenants of warranty, to have used the real estate so retained for the payment of the legacy, it follows that the last purchaser must first redeem, and so on in the inverse order of the alienation until the legacy is fully paid. This is the doctrine established in *Lyman* v. *Lyman*, 32 Vt. 79, and *Root* v. *Collins*, 34 Vt. 173. It applies wherever the charge upon the real estate alienated is in substance a mortgage thereof, or where the alienor has only an equity of redemption to convey, and the debt charged

is one which belongs to him in the first instance to pay. Hence, the purchasers of the real estate charged with the payment of the orator's legacy, must pay the same in the inverse order of the time of their respective purchases.

The only remaining question is, the time when the several purchases are to be valued for the purpose of distributing the charge in this order ; whether at the time of their several purchases, or at some other period. Some of these purchases were made as early as 1863 and 1864; and others as late as 1873 and 1874. There ordinarily would be, and was in fact, during that time considerable variation in the value of the same property. Doubtless, too, some of the purchasers have materially increased, or lessened, the value of their respective purchases by improvements or the reverse. As stated by the late Chief Justice REDFIELD, in *Danforth* v. *Smith*, 23 Vt. 259 : " The general rule of equity is, that all the estates concerned, whether defined by quantity of interest and duration, or by extent of territory, shall contribute according to their relative value at the time the contribution becomes obligatory, which is when the debt falls due ; for until that, there is no power to compel payment or contribution."

We think this is the rule to apply between the respective purchasers and owners of the real estate, in this State, charged with the payment of the orator's legacy. This fixes the time of valuation to be the time when the first installment of the orator's legacy became due and payable. In this respect the levying creditor stands the same as a purchaser.

So far as appears, we think, that all the defendants were properly made parties to the bill. That some of them have ceased to have any interest in the subject of litigation is a good reason why the Court of Chancery should allow them to retire from the controversy without costs, but nothing more than that.

The decree of the Court of Chancery is reversed, and the cause remanded, with a mandate according to the views herein expressed.

NOTE.—This case was heard at the General Term, 1879, and fell to the lamented late Chief Justice PIERPOINT. There was a diversity of views expressed in consultation. At the request of the Chief Justice, the

writer prepared the substance of the foregoing opinion, except upon the last two points, and he expressed his approval. He took the case for consideration upon the last two points, but his state of health was such that he, probably, had neither time nor strength after discharging the necessary duties of his office to give further consideration to the case. Since his decease, the views written for his perusal have been submitted to the other members of the court who participated in hearing the case, and they, concurring, deputed the writer to finish up the opinion, and dispose of the case, as has been done. The views presented to Judge PIERPOINT were in accord with those entertained by Judge BARRETT, who participated in the hearing, and also submitted some views in writing.