JAMAICA SAVINGS BANK *v.* LESTINA AND SYLVIA HOWARD'S
EXECUTOR.

October Term, 1906.

Present:    ROWELL, C. J., MUNSON, WATSON, HASELTON, POWERS, and .
MILES, JJ.

Opinion filed December 4, 1906.

*Mortgages—Construction—Subsequent Mortgagee—Subroga-*
*tion—Foreclosure—Mortgage of Two Parcels of Land—*
*Second Mortgage of One Parcel with Covenants of Title*
*—Effect—Taxes—Voluntary Payment.*

Where a person owning two separate parcels of land, a farm and a
pasture, both subject to the same mortgage, gave a second mort-
gage on the farm, which mortgage, immediately after the descrip-
tion of the premises, stated that "said land is subject to" the first
mortgage,—describing it, but contained full covenants of title,
except that the covenant against incumbrances was that the prem-
ises "are free of incumbrance, except as aforesaid," which was
followed by, "and I will warrant and defend the same against all
lawful claims whatever," the second mortgage conveyed the farm
with full and unmodified covenants of title, and the mortgagor
thereby in effect covenanted with the mortgagee to discharge the
existing incumbrance on the farm, and, as between them, the
mortgagee acquired the equitable right to have the burden thereof
cast upon the pasture, and the record of the second mortgage is
constructive notice of that equitable right.

In a suit to foreclose the second mortgage, brought against defendants,
whose only rights were those of the second mortgagor and of the
person to whom she had conveyed the pasture after the second
mortgage was recorded, it appearing that the orator, in order to
save its estate, had been compelled to incur expense in fulfilling
the condition of the first mortgage, the orator, under the first
mortgage, was entitled to a decree foreclosing all defendants' rights
and interest in the pasture.

It not appearing that the collector of taxes did any official act indicat-
ing his intention to pursue the land for the overdue taxes on the

farm and pasture, the payment thereof by the orator, upon the mere threat of the collector to enforce collection, was voluntary, and the orator can have no relief therefor under either mortgage.

APPEAL IN CHANCERY.   Heard on pleadings and master's report at the April Term, 1905, Windham County, *Tyler,* Chancellor.   Decree for the orator, including the item of taxes.   The defendants appealed.

On December 14, 1858, Jared Howard was the owner of what is here called the "Home Farm," then occupied by himself and wife as a homestead in the town of Jamaica.  He was also owner of another piece of land called the "Banyard Pasture," situated not far from the "Home Farm," but not adjoining it.  On that day Jared and his wife conveyed the farm and the pasture to their son Obediah Howard, and Obediah and his wife executed a mortgage deed of the same back to Jared and wife, conditioned for their support during their lifetime, and also for the support of Taft Howard, an insane son of Jared and wife, and a brother of Obediah, then about thirty years of age and living on the farm with his parents. The part of the condition which relates to Taft reads: "Also provided the grantor, his heirs, executors, administrators or assigns shall well support and maintain on the farm described herein, my brother Taft Howard, during his natural life; also pay and discharge all his funeral charges, and furnish and set up at his grave a suitable gravestone, furnishing said Taft Howard at all times during his natural life all needed assistance, provisions, clothing, firewood, medicine, medical care and nursing, together with a suitable and proper place of residence upon the farm described herein."   The two deeds were duly recorded, and Obediah and wife took possession of the property and carried out the conditions of the mortgage until April 10, 1861, when they conveyed all of the same lands to

Lestina Howard, a sister of Obediah, subject to the above named mortgage which she assumed and agreed to carry out. Obediah and wife then moved away, and Lestina took charge of the property and assumed the control of affairs under the deed to her.    Thus she remained until her decease in the year 1902.    She died testate and Edgar M. Butler was appointed executor of her will.

April 21, 1877, Lestina borrowed the sum of six hundred dollars of the orator and executed to it a mortgage on the "Home Farm," describing it by boundaries, to secure her note for that amount payable to the orator or· bearer, with interest semi-annually.    Immediately following the description of the premises conveyed, the mortgage contains the recital, "Said land is subject to a life lease or mortgage, for the support of Taft Howard during his natural life."    This mortgage was with full covenants save the covenant against incumbrances which reads: "that they (premises) are free of incumbrances, except as aforesaid," referring to clause above quoted showing the Taft Howard lease or mortgage.    Then follows "and I will warrant and defend the same against all lawful claims whatever."    It is to foreclose these mortgages that these proceedings are had.

March 5, 1883, Lestina conveyed by quitclaim deed one undivided half of all these same lands to her sister Sylvia Howard, and on March 5, 1884, Lestina conveyed to Sylvia by warranty deed the Banyard pasture, "except a quitclaim deed of one undivided half which the said Sylvia Howard has from me, the said Lestina, bearing date March 23, 1883, recorded in Book 21, page 40, of the Jamaica Land Records."

· Sylvia died testate while Lestina was yet alive, and her will was duly probated, allowed, and recorded in the Land Records of Jamaica.    The will contained clauses as follows:

"Sixth. I give, devise and bequeath to my sister Lestina How-ard, all of my real and personal estate and effects of whatever description of which I shall die seized and possessed, to have and to hold and to be for her sole use, benefit, control and behoof forever."

"Seventh. It is my will that in the event that my sister Lestina shall not use all that I bequeath to her, that the residue be divided into three equal parts; that one-third be given to the Baptist church in Jamaica, towards the support of preaching of the gospel according to the faith and practice of the Baptist denomination. It is my will that one-third be given to the late Ranney Howard's four children respectively, Mark W. Howard, Kurk R. Howard, May V. Howard, and Hugh J. Howard, and it is my will that the remaining one-third be given to my two brothers Iziah Howard and Obediah Howard, respectively, for their sole use and benefit forever."

Taft Howard continued insane and incapable of taking care of himself the entire period from the time the mortgage was given by Obediah and wife until Taft's decease in October, 1904.

On January 10, 1891, J. Q. Shumway of Jamaica was appointed Taft's guardian, and was also appointed administrator on the estate after his decease. Lestina supported her father and mother as long as they lived, which was several years after she took possession. She also supported and maintained Taft on the "Home Farm" as long as he lived, except what was done by the orator as hereinafter stated. Toward the latter part of her life she became financially unable to pay the interest on the mortgage note to the bank, the taxes on the place, the insurance, and at the same time support and maintain Taft, by reason whereof she ceased to pay interest July 1, 1897, and was unable to pay the taxes on the land for

the years 1899, 1900, 1901, and 1902. After the death of Lestina, the officers of the orator called upon her executor to furnish means for the support of Taft, which he declined to do, alleging as a reason the want of funds in the estate to enable him to do so, and he has never paid anything toward the support.

There is due the bank on the mortgage note the sum of six hundred dollars with interest from July 1, 1897. In 1903, taxes for five years had accumulated on the "Home Farm" and "Banyard Pasture," and the collector of taxes threatened to enforce their collection, whereupon the orator paid the taxes for the years 1902 and 1903, amounting to ninety dollars and forty-nine cents. It also paid the taxes for the years 1899, 1900, and 1901, amounting to the sum of one hundred twenty dollars and fifty-five cents, and the taxes for the year 1904, forty-two dollars and sixty-one cents, and the taxes for the year 1905, forty-one dollars and sixty-one cents. The orator paid for keeping Taft Howard after Lestina's death one hundred dollars, and for extra care of him four dollars and fifty cents; undertaker's bill for his burial thirty-five dollars and fifty cents; to the officiating clergyman three dollars; for digging grave four dollars; and for lettering gravestone eight dollars. The orator paid insurance on the buildings, ten dollars and fifty cents, and for repairs on the building on the "Home Farm," twenty-three dollars.

*Waterman & Martin* for the orator.

The defendants cannot complain of the payment by the orator of anything necessary to be paid in order to protect its security. *Davis et al.* v. *Hullett,* 58 Vt. 90; *Ottaquechee Sav. Bank* v. *Holt,* 58 Vt. 166; *Joslyn* v. *Berlin,* 54 Vt. 670.

*Butler & Moloney* for the defendants.

The pasture having been conveyed away by covenants of warranty cannot now be charged with the first mortgage for support, because that is otherwise well secured.  *Deavitt v. Judevine,* 60 Vt. 695; *Lyman* v. *Lyman,* 32 Vt. 79; *Root v. Collins,* 34 Vt. 173.

The payment of the taxes by the orator was a mere voluntary act, and it can have no aid therefor under either mortgage.  *Fulton* v. *Aldrich,* 76 Vt. 310; *Pitkin* v. *Parks,* 54 Vt. 301; *Hutchins* v. *Moody,* 34 Vt. 433; *Cummings* v. *Holt,* 56 Vt. 384.

WATSON, J.   The mortgage conditioned for the support, etc., of Taft Howard was the first incumbrance on the "Home Farm" and on the "Banyard Pasture." The orator's mortgage was a subsequent incumbrance covering the "Home Farm" only.  By this mortgage, however, the whole estate of the farm was granted with warranty.  This is manifest from the fact that the clause showing the land to be subject to a life lease or mortgage for the support of Taft Howard is in a paragraph independent of the description of the premises granted, and that the mortgage contains full covenants unmodified by reason thereof, 'except against incumbrances, the latter being immediately followed by the covenant to warrant and defend "against all lawful claims whatever." Thereby the mortgagor in effect covenanted with the mortgagee to discharge the existing incumbrance on the premises thus conveyed, and as between them the mortgagee acquired the equitable right to have the burden thereof cast upon the other portion of the mortgagor's property covered by the common incumbrance.  *Deavitt* v. *Judevine,* 60 Vt. 695, 17 Atl. 410; *Lyman* v. *Lyman,* 32 Vt. 79; *Root* v. *Collins,* 34 Vt. 173.

The record of the orator's mortgage was constructive notice to Sylvia Howard of this equitable charge on the "Banyard Pasture" when she subsequently purchased it, and she took her title subject thereto. See cases above cited.

The report shows that to save its estate the orator paid for keeping Taft and for extra care of him after the death of Lestina, his funeral and burial expenses, and for lettering his gravestone the aggregate sum of one hundred fifty-five dollars. The orator by reason thereof will be subrogated to all the equitable rights of Taft Howard under the mortgage for his support, etc., and since as between the farm and the pasture this burden was by the mortgage to the orator made to rest primarily on the pasture, the orator is entitled under the first mortgage to a decree of foreclosure of all rights, title, and interest possessed by the defendants therein. *Lyman* v. *Lyman,* before cited.

The report states that the collector of taxes threatened to enforce collection of the taxes which had accumulated on the two pieces of property, and that thereupon the orator paid the taxes as set forth in the statement of this case. It does not appear that the collector did any official act indicating an intention to pursue the land, hence the orator was not justified in treating the taxes as an incumbrance on the land. It follows that the payment of them was voluntary and the orator can have no relief under either mortgage therefor. *Fulton* v. *Aldrich,* 76 Vt. 310, 57 Atl. 108.

No question is made but that the orator is entitled to a decree of foreclosure of its mortgage on the "Home Farm." Nor is any question made but that the sums paid by it for insurance and for repairs on the buildings should be allowed as part of the sum due in equity.

*Decree reversed and cause remanded with mandate that a decree be entered for the orator in accordance with the views here expressed. Let the costs in the court below be there determined.*