WATSON v. NEAL.

1. MORTGAGES—SUBSEQUENT ALIENATIONS.—Where several parcels of a tract of land covered by mortgage are conveyed on the same day, and a mortgage is given for the purchase money of one of them, in selling these several parcels under the prior mortgage, the parcel so mortgaged by its purchaser was properly subjected to the payment of the prior mortgage to the extent of its special unpaid mortgage before resort was had to the other parcels, which had been fully paid for.
2. AGREEMENT.—After a tract of land covered by a mortgage had been conveyed away by the mortgagor to his children in separate parcels at different times, a paper was prepared, in the form of an agreement *inter partes*, by the children to assume portions of the mortgage debt, and was signed by some of them and rejected by others. *Held*, that the agreement was not valid nor binding upon any one.
3. MORTGAGES—SUBSEQUENT ALIENATIONS—ORDER OF SALE.—Lands covered by a mortgage having been sold by the mortgagor in several parcels and at different times, they should be sold in satisfaction of the mortgage in the inverse order of their alienation, a parcel conveyed pursuant to a prior contract to purchase being treated as an alienation at the date of the contract.
4. HOMESTEAD—INTERESTS.—A homestead set apart to a debtor is still his property, and he may sell or mortgage it at will. The members of his family have no property in it, and only such an interest as is incidental to them as members of his family.
5. IBID.—SUBSTITUTION—MORTGAGE.—When a homestead is set apart to a head of a family, and is afterwards sold, and the proceeds reinvested in another homestead, which is then mortgaged and sold under the mortgage, the purchaser takes a good title, notwithstanding that the sale of the first homestead was made under the order of the court in a proceeding to which the wife and children were parties, that the husband declared in his petition that he and his wife and their children were the only persons interested in said homestead, and that the deed to the second homestead (which was purchased from the wife) declared that the consideration was paid "for the use of my husband, myself, and our children as a homestead in place of our late homestead."

Before NORTON, J., Anderson, October, 1890.

This was an action by W. G. Watson and another, as administrators, against A. M. Neal and others, commenced in January, 1888. The opinion sufficiently states the case.

*Mr. J. P. Carey,* for appellants.

*Messrs. Geo. E. Prince, E. B. Murray,* and *J. L. Tribble,* contra.

December 15, 1892.    The opinion of the court was delivered by

MR. JUSTICE McGOWAN.    This action was brought by the plaintiffs to foreclose certain mortgages executed by Alfred M. Neal to secure certain debts upon a large body of lands owned by him in Anderson County, consisting of a number of small tracts, particularly described in the complaint, and amounting in the aggregate to about two thousand two hundred acres.

As the facts are somewhat complicated, it will promote clearness to give a short outline of the principal facts.    The complaint, among other things, states: (1) that on December 21, 1875, A. M. Neal and William A. Neal executed a joint and several note for $1,500 to the plaintiffs, William G. Watson and Martha E. Watson, as administrators, with interest annually at twelve per cent.; (2) that on July 19, 1875, the defendant, A. M. Neal, executed to the plaintiff, William B. Watson, another note for $659, with interest at one per cent. per month; (3) and that on March 30, 1875, the said A. M. Neal executed another note to the said William B. Watson for $248, with interest at one per cent. per month.    That on May 1, 1877, the defendant, A. M. Neal, in order to secure the aforesaid three notes, and also to secure his indebtedness to one J. C. Whitfield and the firm of B. F. Crayton & Sons, executed a mortgage to the plaintiffs, upon and covering the aforesaid body of lands (2,200 acres).    The debts due to Whitfield and Crayton & Sons have, however, been paid, and, therefore, they go out of the case.    That on March 29, 1876, the said A. M. Neal and William A. Neal executed a note to J. W. Norris for $2,500, with interest, &c., and to secure this obligation, executed and delivered to the said J. W. Norris a mortgage of certain parcels of the aforesaid body of lands.    Norris assigned this note and mortgage to the plaintiff, W. B. Watson; but A. M. Neal and William A. Neal sold certain mortgaged parcels of the aforesaid body of lands, and paid off this Norris note and mortgage, which also go out

of the case, leaving of the original body of lands 1,953 acres. That on February 10, 1876, the said A. M. Neal, in order to secure the payment of his indebtedness to O. H. P. Fant and Mrs. Vashti Burriss, executed to them a mortgage on two tracts of the mortgaged premises, viz., the tract conveyed to him by Sheriff McGukin (460 acres), previously owned by J. W. Guyton, and also the tract conveyed to the said A. M. Neal by Clerk Daniels (305 acres). That the note payable to O. H. P. Fant was assigned by him to William Burriss, and by him assigned to the defendant, Martha E. Watson, who is now the legal owner thereof. And the note to Mrs. Vashti Burriss, guardian, was assigned by her to the plaintiff, William G. Watson, who, on January 18, 1888, assigned the same to the defendants, Mary E. Newell and A. T. Newell, &c. That Bleckley, Brown & Fretwell "have or claim some interest in or lien upon said mortgaged premises, or a part of them," &c.

The defendants are very numerous, and many of them answered, including A. M. Neal, the mortgagor, and his wife Cynthia, and his three children, William A., John B., and his daughter, Mary E., now the wife of A. T. Newell. None of the defendants contested the demands of the plaintiffs, except that they claimed that on May 6, 1879, the mortgagees, the plaintiffs, agreed with the said A. M. Neal, the mortgagor, to reduce the interest on the three notes embraced in the plaintiffs' mortgage from twelve to seven per cent. per annum. The plaintiffs admitted that there had been some arrangement about the interest. The written agreement seems to have been lost, and parol testimony as to its contents was received. The plaintiffs state, that their understanding was, that the reduction of the interest was only for two years, in consideration that, within that time, the amount of $5,000 should be paid upon the mortgage debt, which, as they allege, was not done; and that the mortgagor, A. M. Neal, should also procure the relinquishment of his wife's dower in the mortgaged premises, which was done. The master and the Circuit Judge found that the reduction of the interest was *not limited to two years*, and the calculation of the amounts due on the three notes aforesaid was made on that

basis; and there being no appeal upon the subject, we need not again revert to the matter.

But the questions raised by the different defendants are very numeros and confused. The answers are long, and in some instances duplicating each other. Most of these questions are among the defendants themselves, and suggest matters of family interest, which might be properly brought forward in a settlement of the general estate of the ancestor, A. M. Neal, but have no proper connection with this action of foreclosure. The mortgagor, A. M. Neal, lived several years after executing the mortgages aforesaid. He was alive at the commencement of the action of foreclosure, and answered. But during the progress of the litigation he departed this life intestate, and there is no personal representative of his estate before the court; his heirs and distributees, however, are all parties, and the plaintiffs elect to proceed with the action in strict foreclosure against the mortgaged lands, and ask no judgment against the personal estate. The action, therefore, is simply one of strict foreclosure, and not to settle the estate of A. M. Neal, and to adjust the rights of all persons interested therein. Such questions would necessarily tend to confuse those properly involved in the action, and with a view to clearness we will, therefore, endeavor to state in a condensed form only the important questions which properly arise in the foreclosure proceeding.

*First.* Some of the defendants contend that the joint and several notes of A. M. Neal and William A. Neal, given to the Watsons and secured by the mortgage of A. M. Neal, were, in fact, the obligations of W. A. Neal, as principal, and that A. M. Neal was only the surety, and, therefore, William A. Neal should be required to pay the notes, to the relief of A. M. Neal, the surety, and the lands mortgaged by him to secure them.

*Second.* That A. M. Neal wished to divide his lands, although under mortgage, among his three children, viz: William A. Neal, John B. Neal, and his daughter, Mrs. Newell. In the effort to carry out his purpose of division, he conveyed certain parcels of the mortgaged premises to each of the children, or

for them, at different times, and upon different considerations; some for valuable consideration, more or less, but nearly all for less than the full value, and one, at least, upon the consideration of love and affection, retaining a life estate therein for himself and wife. Under these circumstances, thus briefly and imperfectly stated, some of the defendants contend that this is not a case for the application of the principle, that where lands under a lien have been sold at different times by the owner, the parcels shall be subject to payment in the inverse order of their alienation, for the reason, as contended, "that under an agreement made on January 17, 1882, by A. M. Neal with W. A. Neal, S. C. Neal (wife of John B. Neal), and Mrs. Mary E. Newell, each of them should be compelled to pay on the mortgage debts the several amounts therein mentioned, and the balance due be paid by said parties *pro rata.*" But if it should be decided that said alleged agreement was *not* an executed and binding *contract*, for the reason that neither Mrs. Sarah C. Neal nor Mrs. Mary E. Newell signed it, then that the inverse order of sale of the respective parcels of land should be controlled, *not* by the *dates* at which the respective parcels of land were originially contracted to be sold, and bonds for title given, but by the dates of the actual conveyances of the same by warranty deed.

It was referred to the master, W. W. Humphreys, Esq., "to take the testimony in the case and report the same to the court, with the issues which arise under the pleadings, as between the plaintiffs and defendants, and also as between the defendants themselves, together with the findings of fact thereon." In obedience to this order, the master took an immense amount of testimony, and made a full and careful report, covering nearly twenty pages of printed matter, remarking, very truly, that the issues between the defendants were numerous, and much of the testimony obscure and contradictory, and, in his judgment, irrelevant to the issues raised by the pleadings. Of course, it is impossible to reproduce here the whole report, and we will only refer to so much of it as bears upon the questions which legitimately arise in the foreclosure proceedings. In reference to the point made as to who was

the principal debtor on the joint and several notes given to the Watsons, the plaintiffs, the master found as follows: After explaining one of the notes which had been executed by A. M. Neal and W. A. Neal, he said: "The only other note on which W. A. Neal's name appears, is the joint and several note held by W. G. and Martha E. Watson, as administrators, in which A. M. Neal is the *first* signer, and W. A. Neal the *second*. A. M. Neal executed his individual mortgage to secure this with other notes, and there is no proof to show that any part was W. A. Neal's more than A. M. Neal's debt," &c.

In respect to the alleged agreement of January 17, 1882, between the three children, to the effect that, after certain things indicated were done, they were to pay the balance of the mortgage debt *pro rata*, the master found as follows: "The paper sought to be introduced in evidence as an agreement might have entitled Mrs. M. E. Newell and all the parties to an enforcement of its provisions, had it been executed by all the parties. But Mrs. Newell and Sarah C. Neal refused to sign, and the paper was objected to on the ground that it was not a valid agreement. * * * The paper was left by A. M. Neal and W. A. Neal with H. G. Scudday, Esq., for execution, and it was never removed from his possession until taken out of his papers after this suit. That A. M. Neal did not regard it a valid agreement, all parties not signing, is evident from his subsequent conduct with reference to his assets. All the parties have stood by and seen him dealing with his property in a manner inconsistent with the provisions of the supposed agreement," &c.

The master then proceeds to state the order in which the different parcels of the mortgaged premises were alienated, as follows: "(1) I find that the land first sold is that described in the bond of W. A. Neal, November 6th, 1879, the proceeds of which have been applied in the extinguishment of the oldest mortgage debts thereon; and creditors released their lien on that sold to W. Q. Hammond. (2) That the second part of said mortgaged lands sold was (the 664 acres) sold to John B. Neal, January 2, 1880, in consideration of cotton or its equivalent in money, which has been paid and applied to the mort-

gage debts. (3) That the third sale for money consideration was the 200 acres, sold January 17, 1882, to Sarah C. Neal, the proceeds of which were applied to the oldest lien, and the land is now owned by Bleckley, Brown & Fretwell; also, 350 acres to Mrs. M. E. Newell, the full consideration of which has not been paid, nor any part of the $2,500 applied to any of the mortgage debts. (4) That the last sold was, on said January 17, 1882, the 600 acres to Mrs. M. E. Newell and her husband, S. S. Newell, *in trust* for their children, upon the sole consideration of natural love and affection," &c.

Upon exceptions to this report, the cause came on to be heard by his honor, Judge Norton, who, in the main, concurred with the master in his findings of fact, and held: (1) That Mary E. Newell, having admitted in her answer that she owes A. M. Neal the sum of $1,000, with interest from January 17, 1882, as balance of the purchase money on the 350 acres purchased from him on that day, and the said A. M. Neal in his answer having claimed the same from her, and asked that it should be paid on the mortgaged debts, this sum being admitted to be due on the purchase money of the mortgaged premises, it is equitable that it be paid out of the tract of 350 acres, upon which it is due, before other lands sold on that day (which were paid for) are sold; and it is adjudged, that Mary E. Newell pay this sum before the land of Sarah C. Neal, purchased on the same day and fully paid for, is sold.

(2) That "as to the alleged agreement between A. M. Neal, W. A. Neal, Mary E. Newell, and S. C. Neal, by which the three last named (children) were to pay the debts of A. M. Neal, I conclude, from the evidence, that no such agreement was made, either between A. M. Neal and his said children, or between the children themselves." Mrs. S. C. Neal and Mrs. Newell repudiated the paper.

(3) That the mortgaged lands, or so much of them as may be necessary, be sold in payment of the mortgage debts, in the inverse order of their alienation, by A. M. Neal, the mortgagor, as found by the master, viz: *First.* The tract of land (600 acres) conveyed to Mrs. M. E. Newell and S. S. Newell *in trust. Second.* The tract of 350 acres conveyed to Mrs. M. E. Newell, or

so much thereof as will raise the sum of $1,000, with interest thereon from January 17, 1882, and after raising said sum, the balance of the tract, and the tract of 200 acres conveyed to Mrs. Sarah C. Neal, in equal proportion.   *Third.* The tract of 664 acres conveyed to John B. Neal *in trust;* and *fourth.* the tract of land conveyed to W. A. Neal.

Also, directing that the proceeds of sale be paid out by the master, after paying the costs of the action, as follows: (1) To M. E. and A. T. Newell the sum of $1,535.77, with interest thereon from June 23, 1890.   (2) To Martha E. Watson the sum of $1,678.89, with interest from June 23, 1890.   (3) To W. G. Watson and Martha E. Watson, as administrators, $2,936.61, with interest thereon from June 23, 1890.   (4) To W. B. Watson the sum of $1,660.21, with interest thereon from November 26, 1890.   The Circuit Judge gave John B. Neal and Sarah C. Neal liberty to apply to the court, after notice, for such order in the premises, relating to the collateral agreement between them, as they may deem proper under the decree.   The Newells appealed upon several exceptions; but from the view we take of the case it will not be necessary to go into details, and we think that all of the points may be considered under three propositions.

*First.* It is claimed that the Circuit Judge erred in adjudging that the defendant, Mary E. Newell, should pay the sum of $1,000 on the debts of A. M. Neal, and in ordering her tract of land, purchased from him (350 acres), or enough thereof to raise that sum, with interest from January 17, 1882, to be sold, before other tracts conveyed on the same day by A. M. Neal, which were paid for in full.   This tract of land was a part of that under the original mortgage; Mrs. Newell purchased it from A. M. Neal, and secured $1,000 of the purchase money by her own mortgage, and she admitted in her answer that so much of the purchase money was still unpaid. It seems to us that enforcing payment of it, in extinguishing the old mortgage debts, was merely assigning the bond and mortgage to the original mortgagees, and we do not think that, in doing so, the Circuit Judge erred.

*Second.* It is claimed "that the judge erred in finding that there was no agreement between A. M. Neal, W. A. Neal, S.

C. Neal, and Mary E. Newell, by which the three last named parties (the children) were to pay the debts of A. M. Neal, in consideration of his conveyances of lands to them, and that Mrs. Neal and Mrs. Newell repudiated the same;" when he should have held that there was such agreement, and compelled the said lands of the parties to contribute to the payment of the debts of A. M. Neal, according to the terms of said agreement," &c. It may have been unfortunate that the children of A. M. Neal did not adjust their family matters as to property before the death of the father, A. M. Neal. It seems that such adjustment was talked of, and some effort made towards its accomplishment, but it certainly failed, and that failure has produced much of the unusual confusion and difficulty in the case. There were three children, and only one of them, in the absence of the others, signed a paper for that purpose. The others did not sign, but, on the contrary, repudiated it. In the form of an agreement, with mutual covenants *inter partes*, it was never signed by the parties or delivered, but was left, for signature by the parties, in the possession of the friend who had prepared it. We know of no principle that would justify us in declaring that paper to be a completed binding covenant. We cannot say that the Circuit Judge committed error in "concluding, from the evidence, that no such agreement was made, either between A. M. Neal and his said children, or between his children themselves."

*Third.* But even if there was no such agreement, which was valid and binding, "it is still insisted that it was error in the judge to hold, that the different parcels of the mortgaged premises, sold and conveyed to the children of the mortgagor at different times, must be sold in the inverse order of their alienation." These alienations—some of them at first by contract (with bond for titles), and afterwards consummated by warranty deed, some for full and others for partial money consideration, and at least one for the consideration of love and affection—have been carefully considered by the court. It is quite certain that there must be some order in which the different parcels of the land should be sold; and, in the peculiar facts of the case, we can not conceive of any that

is practicable other than that generally recognized, as stated in the case of the *Savings Bank* v. *Creswell,* 100 U. S., 638, where Mr. Justice Miller said : "The court granted such relief as is authorized by the principle, that where real estate is subjected to a lien in the hands of its owner, and he sells or mortgages separate parcels of that property subsequently, to different persons and at different times, these parcels shall be subjected to payment of the lien in the inverse order of their alienation." See *Bank of Hamburg* v. *Howard and Garmany,* 1 Strob. Eq., 178; *Warran* v. *Raymond,* 17 S. C., 206; 3d Pom. Eq., 1224; 2 Jones Mort., § 1091. In the section last cited from, Jones, it is said: "A person having an agreement for purchase, such that he could enforce specific performance of it in equity, has the same right as an actual purchaser to charge the burden of the encumbrance upon the part of the estate retained by the mortgagor." In this case the master, with great care and attention to a multitude of conflicting statements, found the order of alienation, to which there seems to have been no exception, and the Circuit Judge confirmed his finding, and applied the principle of the inverse order. We cannot hold that, in doing so, he committed error.

The judgment of this court is, that the decree of the Circuit Court be affirmed.

### APPENDIX.

There is in the case a side issue which is called an "appendix," and relates to the issue between Mary L. Neal and the other children of John B. and Sarah C. Neal, of the one part, and Bleckley, Brown & Fretwell, of the other part. This issue can only be understood by a short statement of the facts, as follows:

In the year 1876, John B. Neal, being insolvent, had set off to him, as a homestead for himself and family, a certain house and lot in the city of Anderson. This house and lot was his individual property. Thereafter, in 1883, John B. Neal and his wife, Sarah C. Neal, brought an action in the Court of Common Pleas, against Mary L. Neal and their other children, for the purpose of having the said homestead sold and the proceeds

reinvested. They alleged in their complaint, that they and
their children, infant defendants in the case, were the only
persons interested in said homestead, and prayed that their
homestead might be sold by order of the court, and the pro-
ceeds invested in a homestead in the country. Their children
(who were then under the age of twenty-one years), by guardian
*ad litem,* filed a formal answer. The court ordered the sale of
the homestead in the city of Anderson, and referred it to the
master, to take testimony and report a suitable investment of the
proceeds. The master recommended the investment in a tract
of land, containing ninety-seven acres, then owned by the wife,
Sarah C. Neal. Judge Wallace, on March 3, 1883, confirmed
the report, and ordered, "that the master do invest the proceeds
of sale of the homestead in the city of Anderson, in the ninety-
seven acres of land in the county of Anderson, for which the
said Sarah C. Neal has already executed a title deed, and that
the same be held as a homestead, in the place and stead of the
homestead in the city of Anderson, first requiring the liens
held by Watson to be released by same."

The deed of the ninety-seven acres, referred to in this order
as having been already executed by Sarah C. Neal, among other
things, contained the following statement: "In consideration of
the sum of $915, to me in hand paid, &c., * * * for the use
of my husband, John B. Neal, myself, and our children, as a
homestead, in place of our late homestead in the town of An-
derson, have granted, bargained, sold, and released unto the
said John B. Neal, as a homestead in the place and stead of our
late homestead in the city of Anderson, all that parcel of land,
containing ninety-seven acres, with covenant of warranty," &c.
Thereafter, on January 21, 1885, the said John B. Neal and Sarah
C. Neal jointly executed to Bleckley, Brown & Fretwell their
mortgage on the tract of land (ninety-seven acres) described,
and, thereafter, failing to pay the mortgage debt when due, the
said Bleckley, Brown & Fretwell advertised and sold the land,
under a power of sale contained in said mortgage, and at said
sale the mortgagees became the purchasers, and have since
been in possession of the said tract of land. The issue raised
by Mary L. Neal, a daughter of John B. and Sarah C. Neal,

and her brothers and sisters, by their guardian *ad litem*, is as to the ownership of the tract of land. They deny that John B. and Sarah C. Neal could execute a valid mortgage to Bleckley, Brown & Fretwell on said tract of land, and insist that the sale under said mortgage was void. And if not entirely void, it was, at least, void in so far as the interest of the children extended. They contend that, under the deed, they, as children of John B. and Sarah C. Neal, had a vested interest in said tract of land, and that their parents had no authority or power to mortgage or sell said interest, and prayed the court to so adjudge. Bleckley, Brown & Fretwell controverted this claim of the children of John B. and Sarah C. Neal, and insisted that they were the owners in fee of the entire tract, having purchased the same at the time of the sale under their mortgage.

His honor, Judge Norton, sustained the position taken by Bleckley, Brown & Fretwell, and adjudged that the children of John B. and Sarah C. Neal had no interest in the said tract of land.

From this judgment the children of John B. and Sarah C. Neal appeal, upon the following exceptions: 1. Because his honor erred in holding that the children had no interest in the ninety-seven acres of land purchased as a homestead under an order of court. 2. That said land was impressed with a trust in favor of John B. and Sarah C. Neal and their children, and could not be mortgaged or sold by John B. and Sarah C. Neal, so as to deprive their children of an interest in or benefit of said lands. 3. That his honor erred in failing to construe the deed by which Sarah C. Neal conveyed this land to John B. Neal for the benefit of themselves and their children. 4. That it was admitted by John B. and Sarah C. Neal in the proceedings to sell the original homestead in the city of Anderson, that their children had an interest therein, and as the proceeds of that sale were invested in this tract of land by order of the court, they and their grantees are now estopped to deny the interest of the children. 5. That Bleckley, Brown & Fretwell had notice that the children of John B. and Sarah C. Neal had an interest in this land. 6. That in the case brought by John

B. and Sarah C. Neal for sale of the original homestead and reinvestment of the proceeds, it was practically adjudicated that the children of John B. Neal and Sarah C. Neal had an interest in the purchase money of this tract of land, and as Bleckley, Brown & Fretwell were, by the recitals of the deed under which John B. Neal held this land, put on notice of that adjudication, they should now be estopped to deny it.

The rights incident to homestead have been much discussed and carefully considered by this court, and we can hardly think it is necessary in this case to reopen the argument. If there had been no exchange of homestead, and the question were now as to the original homestead in the city of Anderson, there could not be a question about it. The law allows a debtor, who is a head of a family, to have laid off for him a homestead. Naturally enough, some persons at first thought that "the family" had at least some interest in the "family homestead;" but the assignment was to the head of the family alone, and it is now well settled by our decided cases, that whatever interest the wife and children may have in the homestead, is only incidental to their relations with the head of the family, who under the law has the right to sell, dispose of, or convey his homestead. "The purpose of the homestead provisions in the Constitution was not to create a new estate, or to invest estates already existing with any new qualities, or to subject them to any restrictions, but to secure a right of exemption by forbidding the use of the process of the court to sell certain property for the payment of debts. * * * A debtor has the right to sell or mortgage his homestead after it has been assigned to him, and the legislature has no power to deprive him of that right." *Elliott* v. *Mackorell,* 19 S. C., 242, and *Chalmers* v. *Turnipseed,* 21 S. C., 136.

Then it is quite certain that neither Mrs. Neal nor her children had any vested interest in the original Anderson homestead. That being the case, the question arises, when and how did she or her children acquire any such enforceable interest in the ninety-seven acres, which was substituted "as a homestead in the place and stead of the homestead in the city of Anderson?" We do not think it could be

by the voluntary declaration of John B. Neal and his wife, in the court proceeding to obtain the exchange, "that they and their children were the only persons interested in said homestead." At that time, it may be that some persons thought that the homestead gave a new estate, in which the wife and children had a part. But that cannot now be considered the proper view. Such interest was not created by the order of Judge Wallace, which, in express terms, ordered that the ninety-seven acres "be held as a homestead in the place and stead of the homestead in the city of Anderson." We do not understand that such order *"practically adjudged"* that the children of John B. and Sarah C. Neal had an interest in the purchase money of the original homestead. It is, however, insisted, that the Circuit Judge erred in not construing the deed by which Sarah C. Neal conveyed this land to her husband, John B. Neal, for the benefit of themselves and their children. There is such a recital in the deed, but it was evidently made under a misapprehension, and was entirely *ex parte.* It was not made under the direction of the court, but the order of Judge Wallace referred to it as "already executed." We are constrained to concur with Judge Norton, that the ninety-seven acres were simply substituted for the homestead in the city, and was subject to all the rights and liabilities of that original homestead.

The judgment of the court is, that the judgment of the Circuit Court be affirmed.