## SAVINGS BANK *v.* CRESWELL.

1. Where real estate bound by a judgment or a mortgage has been alienated in separate parcels to various persons at different times, such parcels should be subjected to the satisfaction of the lien in the inverse order of their alienation.
2. The English and the American authorities on the subject considered and reviewed.

APPEAL from the Supreme Court of the District of Columbia.

On June 20, 1870, the firm of S. P. Brown & Son made to Samuel P. Brown its promissory note for $10,000, payable to his order one year thereafter, which he duly indorsed to the Freedman's Saving and Trust Company. To secure its payment, he executed to Daniel L. Eaton, the actuary of the company, a deed of trust for certain lots of ground in Mount Pleasant, in the District of Columbia. Default having been made in the payment of the note, the trustee sold the property Oct. 12, 1872, and conveyed it to the company.

On March 3, 1870, John M. Jolly obtained in the court below a judgment against Samuel P. Brown. At various times in 1873 the company, for a valuable consideration, sold and conveyed a portion of said lots to different purchasers, giving to each its bond to save him harmless against said judgment. It still holds the remaining lots.

Some time about December, 1870, the National Savings Bank of the District of Columbia loaned to said Brown, or to said firm, moneys, to secure the payment of which he executed deeds of trust upon a number of other lots in Mount Pleasant. The moneys remaining unpaid, the bank, to protect its security against said judgment, purchased the same from Jolly, and, in July, 1874, issued an execution thereon, and caused it to be levied on the lots embraced by the trust-deed to Eaton.

This bill against the Savings Bank was filed by John A. J. Creswell, Robert Purvis, and Robert H. T. Leipold, the commissioners of the Freedman's Savings and Trust Company. It alleges that said promissory note remains unpaid, except so

far as it has been reduced by the application of the proceeds of the lots so sold by the company, and that the latter is willing to pay its *pro rata* share to relieve from the lien of said judgment them and the remaining lots conveyed by Eaton, if it is in law or in equity bound so to contribute. It prays for an injunction restraining the Savings Bank and the marshal for said district, who was made a defendant, from selling said lots under said execution, and for general relief. By an amended bill, the purchasers from the company were made defendants. The National Savings Bank set up among other things in its answer that Brown, at the time of the rendition of said judgment, owned a considerable amount of property subject to the lien of said judgment other than that described in the complainants' bill, which property having been conveyed by him subsequently to his conveyances in trust to secure his debt to the defendant, the purchasers thereof are necessary parties in order to charge them with a *pro rata* share of said judgment.

The remaining facts are stated in the opinion of the court.

The special term decreed that the complainants were entitled to have all the real estate belonging to said Samuel P. Brown on the twentieth day of June, 1870, bound by the judgment at law in favor of John M. Jolly, sold in the inverse order of its alienation by said Brown, including that conveyed by him for the security of the National Savings Bank, before the lands conveyed for the security of the Freedman's Savings and Trust Company can be called upon to contribute to the payment of any part of said judgment. The defendants were also enjoined from in any wise interfering with any of said property for the purpose of collecting or satisfying the said judgment, or any part of it, until all the other real estate belonging to said Brown on said twentieth day of June, bound by said judgment, shall have been sold, and the proceeds applied to the payment thereof.

That decree having been affirmed by the Supreme Court of the District of Columbia at its general term, the National Savings Bank appealed to this court.

*Mr. James M. Johnston* for the appellant.

The rule that where several parcels of land, bound by a com-

mon charge, are conveyed by warranty deed to different pur-
chasers and at different times, such parcels are charged with
the paramount lien in the inverse order of their alienation, pro-
vided the junior purchasers have notice of the lien and of the
prior conveyances of portions of the land bound by it, had never,
previously to the decree in this case, been adopted by the Su-
preme Court of the District of Columbia.

On the contrary, this court, in *Hughes* v. *Edwards* (9 Wheat.
489), recognizes the opposing rule that, in marshalling real secu-
rities bound by a common charge, each piece of the incumbered
property shall bear its share of the burden, in the proportion
which the value of such parcel bears to the whole incumbrance,
and irrespective of the order in which the several parcels may
have been conveyed. That case constitutes a rule of property
in the District of Columbia, and is conclusive in the case at
bar.

The propriety of charging the paramount incumbrance on
the parcels of land in the inverse order of their alienation was
considered in *Orvis* v. *Powell* (98 U. S. 176), but there the
court only followed the local rule in force in Illinois.

The authorities are not harmonious. In the following cases,
what is known as the *pro rata* rule has been adopted and acted
upon. *Barnes* v. *Rackster*, 1 Y. & Col. N. R. 401; 1 Hilliard,
Mort. 310 (citing Bacon's Abr., title Execution, B. 4; *Carter*
v. *Bernardiston*, 2 Eq. Cas. Abr. 224; *Sir W. Herbert's Case*,
3 Cox, 14; *Harris* v. *Ingleden*, 3 P. W. 98, 99); *Averall* v.
*Wade*, 2 Llo. & Goo. 252; Story, Equity, sects. 477, 484, 1233 *b ;*
Adams, Equity, 270 (citing 2 Porter, 262; 2 Rand. 384; 4 id.
272; 3 J. J. Marsh. 44; 4 Monr. 76; 2 Ed. C. R. 297); *Green*
v. *Ramage*, 18 Ohio, 429; *Burke* v. *Chrisman*, 3 B. Mon.
(Ky.) 50; *Dickey* v. *Thompson*, 8 id. 313; *Beverly* v. *Brooke*,
2 Leigh (Va.), 425; 2 Humph. (Tenn.) 34; *Massie* v. *Wilson*,
16 Iowa, 391; *Barney* v. *Myers*, 28 id. 472.

If the *pro rata* distribution of the common charge is the
proper mode, the decree below, directing the property to be
sold in the inverse order of its alienation by Brown, is certainly
erroneous.

If this was the only error in the decree, it might be modified
by directing the judgment to be paid *pro rata* from the several

parcels of land mentioned in the bill.    The appellant set up in its answer, however, that the owners of the other property, formerly owned by Brown, are necessary parties, inasmuch as their property must bear its share of the common burden.  No amendment to that effect having been made, the bill should be now dismissed.  *Shields* v. *Barrow*, 17 How. 130.

The bill is defective in that it fails to allege that the appellant, when the conveyance under which it claims was made by Brown, had actual knowledge or constructive notice of the prior conveyance to the company of some of the lots on which the judgment was a lien.

If a vendee should purchase one of several lots, known by him to be bound by a common charge, he, until otherwise informed from some source, has a right to presume that the remainder of the property is still vested in his vendor ; and to infer that the lot so purchased is the last to be seized to satisfy the charge.  *Brown* v. *Simmons*, 44 N. H. 475, 479 ; *Chase* v. *Woodbury*, 6 Cush. (Mass.) 143 ; 2 W. & T. Lead. Cas. in Eq., pt. 1, p. 298.

Hence, in order to call into existence the equity appealed to by the complainants, it must appear that the junior vendee had notice of the paramount lien and prior conveyance.  *Startey* v. *Stocks*, 1 Dev. (N. C.) Eq. 314 ; *Lock* v. *Fulford*, 52 Ill. 166 ; *Iglehart* v. *Crane*, 42 id. 261, 266 ; *Insurance Company* v. *Bell*, 22 Barb. (N. Y.) 56, 57, 63 ; *Green* v. *Ramage*, 18 Ohio, 428 ; *Reilly* v. *Mayer*, 12 N. J. Eq. 56–60 ; *Mechanics' Association* v. *Conover*, 14 id. 225 ; *Orvis* v. *Newell*, 17 Conn. 100 ; *Brown* v. *Simmons*, *supra ; Chase* v. *Woodbury*, *supra.*

Indeed, to hold that a purchaser of real estate is to be prejudiced by a mere equity, not known to him from the land records or from any other source, would be entirely opposed to the spirit of our registry laws.

The bill of complaint contains no allegation that the deed from Brown to secure the loan made by the Freedman's Savings and Trust Company was ever recorded.

However the truth may be, evidence to establish the fact of record would not be admissible, since the proofs must be confined to the allegations.  *Simms* v. *Guthrie*, 9 Cranch, 25 ; *Boone* v. *Chiles*, 10 Pet. 209.

It is true that the original deed is filed as an exhibit with the bill of complaint, but it is not, for that reason, a part of the latter, nor can its contents be treated as a portion of the averments of the complainants. *Terry* v. *Jones*, 44 Miss. 542; *Strathan* v. *Insurance Company*, 45 id. 600; *Caton* v. *Willis*, 5 Ired. (N. C.) Eq. 335.

Even if it were competent to refer to that deed for the purpose of supplying allegations which are wanting in the bill itself, there is nothing on its face to indicate that it was ever recorded, much less that it was of record when the appellant loaned its money on the faith of Brown's title to the land taken as security. The title of a *bona fide* purchaser for valuable considerations is not to be affected by loose, vague, and uncertain evidence of the existence of the prior title. If a former owner neglects to record his title, every presumption is to be made in favor of a subsequent purchaser. *Boggs* v. *Varner*, 6 Watts & S. (Pa.) 469.

But it is maintained that, even if that deed had been recorded, the appellant would not thereby be charged with constructive notice. The record does not show that Brown's title to the lots which the company subsequently owned was acquired by the deed or conveyance which passed the title to those he conveyed to secure the appellant. So far as the record shows, the parcels of ground came to Brown by different chains of title. But the appellant is not charged with constructive notice of any conveyance by Brown, unless it be in the chain of its title. *Green* v. *Ramage*, 18 Ohio, 429; *Boggs* v. *Varner*, 6 Watts & S. (Pa.) 469; *Guion* v. *Knapp*, 6 Paige, Ch. 42; *Chase* v. *Woodbury*, 6 Cush. (Mass.) 143; *Hamilton* v. *Royse*, 2 Sch. & Lef. 326.

Those courts which favor the rule that charges the lien on the several parcels of land in the inverse order of their alienation, rest their argument on the fact that the purchaser paid full consideration for the title, and received a general warranty deed. *Bradley* v. *George*, 2 Allen (Mass.), 392; *Wallace* v. *Stevens*, 64 Me. 225.

But a beneficiary, under a deed of trust, does not occupy this position, for he does not pretend to pay a full price for the property, and the trustee only receives a conveyance of

the grantor's then interest in the land. Such a deed only operates by way of estoppel against the grantor, and does not profess to pass an absolutely perfect title, and for full value. In such cases the *pro rata* rule has been held to apply, even if, in the same jurisdiction, the opposite rule would hold in cases of warranty deeds. *Ely* v. *Perrine*, 2 N. J. Eq. 396; *Pancoast* v. *Duval*, 26 id. 445.

He who seeks to enforce an equitable right, especially if he appeals to the chancellor to grant him a mere benevolence, must allege in his bill all the facts necessary to make out his title to relief, and must show affirmatively that it would be equitable, in relation to all the parties, to afford him the relief asked. Cases *supra ; Tomlinson* v. *McKaig*, 5 Gill (Md.), 276 ; *Orvis* v. *Newell*, 17 Conn. 100 ; *Ridgway* v. *Toram*, 2 Md. Ch. 308 ; *Dorr* v. *Shaw*, 4 Johns. Ch. 17 ; *Sterling* v. *Brightbill*, 5 Watts, 229, 231–233.

If the equities of the case are considered, complainants are not entitled to the relief which they seek, not having brought themselves fully within the rule on which they rely.

Both the complainants and the appellant are charged with constructive notice of the judgment lien, if either is. In this respect their claims are equally meritorious, for each purchased under a misapprehension of facts. The contracts were of the same character and for the same purpose, and the appellant had no notice of the conveyance now set up by the complainants.

But when the bill was filed in this cause the appellant had already seized, by an execution issued on the paramount judgment, a portion of the property now claimed by complainant.

Where the equities are balanced, the legal course of an execution is not to be disturbed. *Miller* v. *Jacobs*, 3 Watts (Pa.), 437. It is well settled that where parties have an equal claim to the consideration of the chancellor, the law will be allowed to take its course. *Zeigler* v. *Louk*, 2 id. 206 ; *Erbs's Appeal*, 2 Pearson & Watts, 296 ; *McGinnis's Appeal*, 16 Pa. St. 445; *Wallace's Estate*, 59 id. 401 ; *Withers* v. *Carter*, 4 Gratt. (Va.) 407.

Inasmuch, therefore, as the complainants have not alleged

nor established the necessary jurisdictional facts, nor brought themselves within the rule of which they claim the benefit, nor established any equity which is so far superior to appellant's as to justify the court in interfering with a legal execution, the bill should be dismissed.

It is submitted that, even if the court below had the power to grant the complainants any portion of the relief prayed, it erred in the extent of that relief; for the complainants show no title to the land conveyed to the appellant before filing the bill, and the appellant asks no relief whatever.

*Mr. Enoch Totten, contra.*

The question arising in the case is, whether or not the judgment now owned and held by the National Savings Bank can be collected out of the property conveyed to the Freedman's Savings and Trust Company, until all the other property bound by the judgment and owned by Brown at the date of the sale to the company shall have been first sold and the proceeds applied to the payment of the judgment.

. The lots bound by this judgment, and subsequently mortgaged or sold by Brown at different times to different persons, are chargeable in the inverse order of their alienation; that is to say, the parcels last sold are to be charged to their full value, and then go backwards until the judgment shall have been fully paid.

This doctrine is now fully established in this country. It was firmly settled in *Clowes* v. *Dickinson*, 5 Johns. (N. Y.) Ch. 285; s. c. 9 Cow. (N. Y.) 403. See also *Gill* v. *Lyon*, 1 Johns. (N. Y.) Ch. 447; *Sturtevant* v. *Hall*, 2 Barb. (N. Y.) Ch. 151. It has been followed in nearly all the States in the Union where the question has arisen. *Shannon* v. *Marselis*, Sax. (N. J.) 413; *Shepherd* v. *Adams*, 32 Me. 63; *Holden* v. *Pike*, 24 id. 427; *Cushing* v. *Ayre*, 25 id. 383; *Com. Bank* v. *Western Res. Bank*, 11 Ohio, 444; *Cummings* v. *Cummings*, 3 Ga. 460; *Pallen* v. *Agricultural Bank*, 1 Freem. (Miss.) Ch. 419; s. c. 8 Smed. & M. 357; *Gist* v. *Pressley*, 2 Hill (S. C.), Ch. 318; *Stoney* v. *Shultz*, 1 id. 500; *Bank* v. *Howard*, 1 Strobh. (S. C.) 173; *Wright* v. *Atkinson*, 3 Sneed (Tenn.), 585; *Conrad* v. *Harrison*, 3 Leigh (Va.), 532; *Lyman* v. *Lyman*, 32 Vt. 79. See also 2 Lead. Cas. in Eq.

(Am. notes) 237; *Cary* v. *Folsom*, 14 Ohio, 365; *Gates* v. *Adams*, 24 Vt. 70; *Watson* v. *Barr*, 7 Md. 117; *Hamilton* v. *Schwehr*, 34 id. 107; *Titus* v. *State*, 17 Wis. 248; *Wynn* v. *Carter*, 20 id. 107; *Hurd* v. *Eaton*, 22 Ill. 122; *Orvis* v. *Powell*, 98 U. S. 176. For a list of cases and remarks on this doctrine see 2 Lead. Cas. in Eq. (1877), pt. 1, p. 291.

Mr. Justice Story, in his learned work on Equity Jurisprudence, inclines to doubt the justice of the doctrine as established in America, and seems to prefer the doctrine which charges the original incumbrance ratably upon the land of subsequent purchasers. He says the doctrine has been so " asserted in the ancient as well as the modern English cases on the subject." 2 Story, Eq., sect. 1233 *b*. He cites *Averall* v. *Wade* (11 Eng. Ch. 252), as an authority sustaining this view. Upon an examination of that case it will be found that it sanctions the American rule as above laid down. *Hamilton* v. *Royse* (2 Sch. & Lef. 315) is to the same effect. See *Cowden's Estate*, 1 Pa. St. 267.

Where an individual, owning two or more pieces of land bound by a personal judgment against him, sells a part of them, it is well settled as a rule of equity that the part retained shall be primarily chargeable with the debt. 2 Story, Eq., *supra*. It is clearly right and just, that on his alienation of a part the remainder should become immediately burdened with the entire debt. He cannot escape from the rule, and, in order to pay the judgment, enforce contribution against his vendee. This is conceded in all the cases. How, then, can he sell to a third person a privilege or right which he himself does not possess? The second purchaser " sits in the seat of his vendor," has precisely the same rights, and incurs the same obligations. *Clowes* v. *Dickinson*, *supra*. The judgment was notice to the world, and every purchaser or mortgagee was bound to ascertain what lands the debtor had alienated subsequently to its rendition. Every conveyance by Brown of land bound by the judgment directly and materially affected the lots whereof he retained the ownership, by releasing from the lien the parcels so conveyed, and transferring a corresponding additional burden to the remainder of them.

The deed of trust was in effect a mortgage, and every subsequent mortgagee was bound to take notice of its registration in the proper office.. *Lyman* v. *Lyman*, 32 Vt. 81.

A judgment of the Supreme Court of the District of Columbia binds the defendant's lands. *Tayloe* v. *Thompson's Lessee*, 5 Pet. 358.

MR. JUSTICE MILLER delivered the opinion of the court.

Samuel P. Brown, being seised in fee of a large number of lots constituting the subdivision of a tract of land into the town of Mount Pleasant, had a judgment rendered against him, March 3, 1870, in favor of one Jolly, for the sum of $4,694.05, in the Supreme Court of the District of Columbia, and the lots being within the District, the judgment became from that day a lien on them. On the twentieth day of June of that year, Mr. Brown borrowed of the Freedman's Savings and Trust Company the sum of $10,000, and executed to Daniel L. Eaton a deed of trust conveying a part of the lots owned by him in Mount Pleasant as security for the repayment of the loan. Under this deed of trust the lots were sold and bought in for the Freedman's Bank, and they have resold several of them and guaranteed the title to the purchasers.

A few months after the execution of the deed of trust above mentioned by Brown, he began to borrow money from the National Savings Bank, the appellant in this case, and gave deeds of trust on other lots in the same subdivision to secure the payment of these loans. In July, 1874, the National Savings Bank, fearing the loss of their security by the judgment against Brown of March 3, 1870, purchased that judgment, and ordered an execution to be issued on it, which was levied on the lots conveyed to Eaton for the benefit of the Freedman's Bank. That bank having passed into the control of Creswell and others, as commissioners appointed to wind up its affairs, they brought the present bill in chancery to release those lots from sale under that execution.

The court granted such relief as is authorized by the principle that where real estate is subjected to a lien in the hands of its owner, and he sells or mortgages separate parcels of that property subsequently to different persons, and at different

times, these parcels shall be subjected to payment of the lien in the inverse order of their alienation.

The facts show that the conveyances to secure the savings bank were made subsequently to that made to secure the Freedman's Bank, and if the rule we have mentioned be a sound one, and there be no special reason to exempt this case from its operation, the Freedman's Bank was entitled to have the lots conveyed to the savings bank applied to the extent of their value in payment of the judgment, before their lots could be subjected to that payment.

There are one or two matters relied on by appellant to take this case out of the rule.

1. It is said that appellant had no actual notice of the deed of trust to Eaton when it took its mortgages, and a large part of the argument of counsel is devoted to this subject. But it does not appear that appellant in its answer set up the defence of a *bona fide* purchaser without notice, nor that any such question was raised in the court below. The main foundation of the suggestion, however, namely, that there is no evidence that the deed to Eaton was recorded, which appeared to be so by the transcript, is removed by the production of the original deed, having on it the certificate of the register of deeds, that it was properly recorded. This removes the foundation of the argument, and it must fail.

Another objection is that the appellant sets out in its answer that other persons had bought lots of Brown, after the rendition of the judgment, and were proper parties to this suit, and that as the complainants failed to bring them before the court, the decree in their favor is erroneous, and must be reversed for that reason.

But while the answer says that, as the appellant is informed and believes, there was a considerable amount of other property than that described in the bill, owned by said Brown, and subject to the lien of the judgment, which was sold and conveyed by him after his conveyance to secure the debt of the appellant, it does not describe the property or name the purchasers or fix the date of their purchases.

As the purchases are said to be subsequent to the creation of appellant's lien, it was the interest of appellant to set out the

facts necessary to enable the complainants to bring them before the court. Nothing in the decree as rendered prevents defendant from selling these lots under his execution. The complainants, therefore, were not bound to hunt up the parties and the transactions to which appellant merely alludes in such vague and indefinite terms.

Lastly, the appellant argues that the subjection of the property covered by the lien of the judgment to its satisfaction, in the inverse order of its alienation, is not the prevailing rule in courts of equity, nor the rule of property in the District of Columbia.

Though the attention of counsel was directed during the argument to the production of any authoritative decision of the courts of the District or of Maryland which would be conclusive of the question, none could be found, after several days' opportunity for examination. The decree before us must rest on the general equity doctrine, if it be sustained at all.

The question is also a new one in this court, for *Orvis* v. *Powell* (98 U. S. 176) was decided on the ground that the principle having become a rule of property in Illinois, would be followed by us in reference to lands in that State. And *Hughes* v. *Edwards* (9 Wheat. 490) does not raise the question before us now, much less decide it. That was merely a question whether improvements constructed on the land after the execution of the mortgage became subject to its operation.

The proposition we are called on to consider is one on which the authorities, though numerous, are by no means in harmony. Mr. Justice Story, in his work on Equity (vol. ii. sect. 1233 *b*), approves the rule, so far as any of the property subject to the lien remains in the hands of the party against whom the lien was first established, but he says there is great reason to doubt whether it can be applied as between subsequent purchasers from that party, when it has been alienated at different times and to several persons. " On the contrary," he says, in such case " there seems strong ground to contend that the original incumbrance or lien ought to be borne ratably between them, according to the relative value of the estates. And so the doc-.

trine has been asserted in the ancient as well as the modern English cases on the subject."

The older cases cited for this proposition scarcely sustain it. In *Sir William Herbert's Case* (3 Coke, 11), it was resolved that " if A. be seised of three acres, and acknowledge a recognizance or statute, and enfeoff B. of one acre, and C. of another acre, and the third descends to his heir, and if execution be sued out against the heir he shall not have contribution against the purchasers, for the heir sits in the seat of his ancestor." Among them is also *Lanoy* v. *The Duke and Duchess of Athol* (2 Atk. 444), in which Lord Hardwicke says : " Suppose a person who has two real estates, mortgages both to one person, and afterwards only one estate to a second mortgagee, who had no notice of the first ; the court, in order to relieve the second mortgagee, have directed the first to take his satisfaction out of that estate only which is not in mortgage to the second mortgagee, if that is sufficient to satisfy the first mortgage, in order to make room for the second mortgagee, even though the estates *descended* to two different persons." This seems to be a pretty clear statement of the rule adopted in many of the States of the Union at the present day, though based rather upon the principle applicable to marshalling assets, that he who has a right to resort to two funds, in one of which alone another party has a subsidiary lien, shall be compelled to exhaust the one to which the other cannot resort before coming upon the one in which they both have an interest, than on the ground now relied on in the courts of this country.

That ground is that the first purchaser has a right to suppose that the part of the mortgaged property which he leaves with the mortgagor will in his hands be first subjected to the payment of the mortgage he has made. To this Judge Story assents. But the principle goes further, and holds that when a second purchaser from the mortgagor buys either all or a part of the incumbered property which remains, he cannot place himself in a better position than his grantor, and revive the burden on the first purchaser's land, from which it had been wholly or partially relieved by its primary pressure on the land left by him in the hands of the mortgagor.

No very clear decision of the question seems to have been

rendered in the English courts on the subject, though occasionally alluded to, until the case of *Averill* v. *Wade*, decided in the Irish Chancery by Lord Chancellor Sugden in 1835, whose great authority in all that concerned titles to real estate will not be disputed. Looking to the question as governed by the doctrine of marshalling assets, he appears to decide against its application in cases like the one now before us, and refers to an opinion of Lord Eldon in 8 Vesey, 382, in which, while this point was not directly in issue, the argument of that eminent chancellor leaned that way.

But while these latter are authorities of great weight, it is to be remembered that they were made long after the time to which this court has looked to the English chancery practice as governing ours, while the case of Sir William Herbert, and Lord Hardwicke's decision, were before ; and that the English courts have not considered, as far as we know, the principle on which the rule is based in this country.

That principle was stated by Chancellor Kent, with his usual force and clearness, in 1821, in *Clowes* v. *Dickenson* (5 Johns. (N. Y.) Ch. 235), which has become the leading case on the subject in this country.

After referring to the case of Sir William Herbert, he says : " This case settles the question as between the vendor and purchaser, or the heirs of the vendor and the purchaser ; and if there be several purchasers in succession, at different times, I apprehend in that case also there is no equality and no contribution as between these purchasers. Thus, for instance, if there be a judgment against a person owning at the time three acres of land, and he sells one acre to A., the two remaining acres are first chargeable in equity with the payment of the judgment debt, as we have already seen, whether the land be in the hands of the debtor himself or of his heirs. If he sells another acre to B., the remaining acre is then chargeable in the first instance with the debt as against B., as well as against A., and if it should prove insufficient, then the acre sold to B. ought to supply the deficiency in preference to the acre sold to A. ; because, when B. purchased, he took his land chargeable with the debt in the hands of the debtor, in preference to the land already sold to A. In this respect we may say of him as it is

said of the heir, *he sits in the seat of his grantor*, and must take it with all its equitable burdens; it cannot be in the power of the debtor, by the act of assigning or selling his remaining land to throw the burden of the judgment or a ratable part of it back upon A." The doctrine and the reason upon which it is founded cannot be better stated than in this extract from the opinion.

We may, as an additional reason, suggest a principle often called into action in recent times in the courts; namely, that where one of two innocent persons must suffer a loss, it should fall on him who by reasonable diligence or care could have protected himself, rather than on him who could not. In the case supposed, the second purchaser, at the time of his purchase, knowing that the land which he buys is subject to the incumbrance before that already sold, can exact of the vendor security or protection against the incumbrance, which it is out of the power of the first vendor to do at the time his risk is increased by the very act of the second purchaser.

Since the decision in the case of *Clowes* v. *Dickenson*, the doctrine there announced has been followed by much the larger number of courts of the different States, though there are a few of very high authority which have held that as between vendees of land subject to a prior incumbrance, equality is justice, and the debt shall bear equally upon all the parcels originally subject to it, in proportion to their values.

The cases are collected in the briefs of counsel on both sides in this case, to which reference is here made as they will be given by the reporter, and in Leading Cases in Equity, vol. ii. part 1, p. 291, edition of 1877.

We are of opinion that the preponderance of authority as shown by judicial decisions, as well as the weight of sound argument, is in favor of the rule laid down by Chancellor Kent, and the decree in this case is accordingly

*Affirmed.*