NEELY v. WILLIAMS et al.

(Circuit Court of Appeals, Eighth Circuit. October 16, 1906.)

No. 2,355.

1. VENDOR AND PURCHASER—PAYMENT OF PURCHASE MONEY—DEDUCTION FOR BREACH OF COVENANT.

The rule that, where land subject to an incumbrance is sold in parcels successively to different purchasers, the parcels are chargeable in the inverse order of alienation, is applicable in a case where the owner of separate tracts of land devised them together, charged with the payment of annuities, and the devisee sold and conveyed them successively by warranty deeds to different purchasers, and the last grantee who has expended money to obtain a release of the annuities cannot enforce contribu-

tion from the prior purchasers, but is entitled under his covenant of warranty to deduct the entire amount so necessarily expended from a deferred payment of purchase money due the grantor.

**2. SAME—TENDER SUBJECT TO CONDITION.**

A note given for the purchase price of land conveyed with covenants of warranty and against incumbrances, where there are existing incumbrances, is due at maturity only on condition that such incumbrances are removed, and a tender of payment subject to such condition is good and stops the running of interest.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Vendor and Purchaser, §§ 344, 345.]

Hook, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the District of Nebraska.

William Baird and E. S. Durment, for appellant.

J. H. Broady, Sr. (J. H. Broady, Jr., on the brief), for appellees.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

ADAMS, Circuit Judge. This was a bill in equity instituted by Joseph A. Williams and his wife, Annie Williams, to enjoin the prosecution of an action at law brought by the defendant and appellant, Richard M. Neely, to enforce the payment of a promissory note made by the former and held by the latter for $3,500. The note was given by complainants as part payment for a quarter section of land purchased by Mr. Williams from Annie H. Neely, joint residuary legatee with one Richard S. Malony, Jr., under the will of their father Richard S. Malony, Sr. The grantor made a warranty deed to complainant Joseph A. Williams covenanting that the premises were free from incumbrances. That covenant was broken as soon as made because the land was subject to the lien of two annuities created by the devisor in his last will, one in favor of Hannah Blake for $200 and the other in favor of Sarah Foss for $100. After suit was instituted against complainants to recover the balance of the purchase money represented by the note of $3,500 they brought their bill in equity to enjoin the suit until the present worth of the annuities should be ascertained and provision made for their satisfaction. On a former appeal the equities of the case were considered and settled by this court. See Williams v. Neely, 134 Fed. 1, 67 C. C. A. 171, 69 L. R. A. 232, to which reference is made for a more full statement of many incidental facts not necessary now to be specified. The conclusions then reached became the law of this case and must now be recognized as controlling. Guaranty Co. of North America v. Phenix Ins. Co., 59 C. C. A. 376, 124 Fed. 170, 174. They may be briefly summarized as follows: First, that the remedy in equity as invoked by complainants was available to them; second, that Richard M. Neely, the defendant and appellant, who was payee of the note and who took it by some arrangement satisfactory to himself and Annie H. Neely, his mother, the grantor in the deed, took it subject to any defenses which could have been urged against it in the hands of the grantor—in other words, that Richard, for the purposes of this case, stood in the shoes of his mother—third, that a grantee in a deed containing a covenant against incumbrances who has not

paid the purchase price in full has a choice of two remedies for breach of the warranty, either to pay the balance due and sue the grantor on the covenant against incumbrances or reduce the grantor's recovery for the balance due by the amount of the diminution of the value of the title occasioned by existing incumbrances; fourth, that in a suit by the grantor on a promissory note given for unpaid purchase price of the land which he has covenanted to be free from incumbrances the grantee may plead a defect of title as a failure of consideration of the note in whole or in part.

After reaching and announcing the foregoing conclusions, and as the result of an intimation made at the argument, to the effect that complainants had paid and secured releases of the liens upon their land, this court by Sanborn, Circuit Judge, speaking for it, said:

"In case it shall appear, as counsel have intimated, that since the final hearing below the complainants have paid and secured releases of these liens, the court should reduce the amount of the recovery in the action at law upon the note by the amount not exceeding the value of the annuities at the time such payments were made which the complainants have necessarily expended in paying the liens of the annuities upon their lands and in defending their title against them."

The decree of the lower court was then reversed, with instructions to proceed in conformity with the opinion.

In the light of the law of the case thus declared, the only remaining question for our consideration as conceded by counsel for defendant relates to the amount of credit to which complainants are entitled on their note. This question must be answered by ascertaining how much they necessarily paid to secure a release of their land from the lien of the annuities. There is no substantial doubt that complainants necessarily paid $3,500 for that purpose. An allegation to that effect is made in the supplemental bill filed by complainants after the case was remanded to the court below, to which defendant filed a plea and answer. The plea does not relate to that allegation, and the answer by not denying admits it to be true. Moreover, the proof satisfactorily establishes its truth. We might, therefore, by giving a literal construction to the law of the case as laid down in the former appeal and to the pleadings and undisputed proof now before us, properly affirm the decree below without any further consideration, but some other questions have been ably discussed by counsel to which we feel constrained to give attention. These questions arise out of the following facts: The lien of the annuities in question attached alike to two other quarter sections of land besides the quarter section purchased by Williams from Annie H. Neely. The father of Mrs. Neely died seised of these three quarter sections, and by his will devised them to Annie H. Neely and Richard S. Malony, Jr., creating a charge upon all of them for the payment of the annuities in question. Shortly after his death the devisee, Mrs. Neely, either jointly with Richard S. Malony, Jr., or alone after she had acquired his interest, conveyed the three quarter sections in the following order as to time: First, one to Stanley B. Wilson; second, one to Wenzel Herdlichtka; and, third and last, one to Joseph A. Williams, complainant in this case, executing to each a warranty deed covenanting, amongst other things, against all incumbrances.

The consideration for each of the conveyances was $6,000. Wilson and Herdlichtka each paid that sum in cash on the delivery of their deeds to them, respectively. Williams paid $2,500 in cash and he and his wife gave their note for $3,500, maturing five years after date, and secured the payment thereof by mortgage upon the quarter section purchased, for the balance of the purchase price. The lien of the annuities attaching as between the annuitants and the successive purchasers to the three quarter sections alike, it was impossible for Williams to release his own without necessarily releasing the land of Wilson and Herdlichtka from the same lien.

The contention is that, because the three quarter sections sold, respectively, to Wilson, Herdlichtka, and Williams were of equal value and equally chargeable with the incumbrance created by the annuities, the complainants were entitled to credit for only one-third of the amount paid in satisfying the annuities, and that the learned trial court should not have charged defendant with that portion of the money paid by complainants which was properly chargeable against the quarter sections of Wilson and Herdlichtka. And the further contention is that on the payment by Williams of the annuities he had a right of contribution from Wilson and Herdlichtka each in the sum of one-third of what he had necessarily paid, on the ground that he had paid off and satisfied a joint obligation imposed upon the three alike, and that, if he did not recover from them, it was his own fault, the consequences of which not being chargeable against Neely.

There are two satisfactory reasons why neither of these contentions are sound:

First. Williams, being the last in point of time to take a conveyance from Mrs. Neely, took title so far as the prior successive purchasers were concerned charged with the payment of the entire debt secured by the lien. The question as to the liability of mortgaged property acquired by successive purchasers of different parcels for the payment of the mortgage debt as between themselves has been the subject of much discussion and of somewhat divergent views. Some of the leading cases holding to liability in the inverse order of alienation are Clowes v. Dickenson, 5 Johns. Ch. (N. Y.) 235; State v. Titus et al., 17 Wis. 241; Root v. Collins, 34 Vt. 173; Deavitt v. Judevine Co., 60 Vt. 695, 17 Atl. 410; Crosby v. Farmers' Bank, 107 Mo. 436, 17 S. W. 1004; Sager v. Tupper, 35 Mich. 134; Cushing v. Ayer, 25 Me. 383; Aiken v. Milwaukee & St. Paul Railway Co., 37 Wis. 469; Mahagan v. Mead, 63 N. H. 570, 3 Atl. 919; Mount v. Potts, 23 N. J. Eq. 188; Brown v. Simons, 44 N. H. 475; Hills' Administrator v. McCarter, 27 N. J. Eq. 41. In an exhaustive note to the leading case of Aldrich v. Cooper, White & T. Lead. Cas. Eq. vol. 2, pt. 1, pp. 228, 293, it is said, citing many authorities in support:

"It is well settled in conformity with these decisions that, where land which is subject to the lien of a mortgage or other permanent incumbrance is sold in parcels successively to different persons the buyers are prima facie chargeable in the inverse order of alienation. Such is the established rule in New York and Pennsylvania, and it prevails throughout the greater part of the United States."

Jones in his work on Mortgages (5th Ed. vol. 2, § 1620) admirably states the reason of the rule as follows:

"This rule rests upon the reason that, where the mortgagor sells a part of the mortgaged premises without reference to the incumbrance, it is right between him and the purchaser that the part still held by the mortgagor shall first be applied to the payment of the debt; and this part is regarded as equitably charged with the payment of the debt. Therefore, when he afterwards sells another portion of that remaining in his possession, the second purchaser simply steps into the shoes of the mortgagor as regards this land, and takes it charged with the payment of the mortgage debt as between him and the purchaser of the first lot; but still, as between the second purchaser and the mortgagor, it is equitable that the land still held by the latter should pay the incumbrance. In this manner the equities apply to successive purchasers. * * *"

In section 1621 the author says:

"These equitable considerations have led to the adoption of the rule that the mortgagee in such case shall sell the mortgaged land in the inverse order of its alienation by the mortgagor; and it will be seen by the cases cited that this rule has been generally adopted."

The opposite view, favoring the discharge of an existing lien by the several successive purchasers of parcels of the land subject to the lien pro rata, finds support in Story's Eq. Juris. § 1233; Barney v. Myers, 28 Iowa, 472; Huff v. Farwell, 67 Iowa, 298, 25 N. W. 252; Green v. Ramage, 18 Ohio, 428, 51 Am. Dec. 458; Burk v. Chrisman, 3 B. Mon. (Ky.) 50; Hall v. Morgan, 79 Mo. 47, and in some other cases.

In this conflict of authorities the case of Savings Bank v. Creswell, 100 U. S. 630, 25 L. Ed. 713, came before the Supreme Court of the United States, where the rule of liability in the inverse order of alienation seems to be finally and authoritatively adopted. In that case Mr. Justice Miller, speaking for the court, after reviewing the English and American authorities and considering the conflicting views of Chancellor Kent in Clowes v. Dickenson, supra, and Mr. Justice Story in his work on Equity Jurisprudence, supra, quotes with approval the argument of Chancellor Kent as follows:

"If there be several purchasers in succession, at different times, I apprehend in that case, also, there is no equality and no contribution as between these purchasers. Thus, for instance, if there be a judgment against a person owning at the time three acres of land, and he sells one acre to A., the two remaining acres are first chargeable in equity with the payment of the judgment debt, as we have already seen, whether the land be in the hands of the debtor himself or his heirs. If he sells another acre to B., the remaining acre is then chargeable in the first instance with the debt as against B., as well as against A., and, if it should prove insufficient, then the acre sold to B. ought to supply the deficiency in preference to the acre sold to A., because, when B. purchased, he took his land chargeable with the debt in the hands of the debtor, in preference to the land already sold to A. In this respect we may say of him, as it is said of the heir, he sits in the seat of his grantor, and must take it with all its equitable burdens."

Mr. Justice Miller then concludes as follows:

"The doctrine and the reason upon which it is founded cannot be better stated than in this extract from the opinion. * * * We are of opinion that the preponderance of authority as shown by judicial decisions, as well as the weight of sound argument, is in favor of the rule laid down by Chancellor Kent."

A distinction is found in some of the authorities examined on this subject between cases where personal responsibility for the discharge of the lien is devolved upon the owner and cases where the charge, like a rent charge growing out of the land itself, is alone involved. It is claimed that the doctrine subjecting the parcel last conveyed to the payment of the entire lien is applicable only to cases where the debt was the individual obligation of the owner of the land.

Learned counsel for defendants quote from Tiffany on the Modern Law of Real Property (volume 2, p. 1223), as follows:

"Since this doctrine of liability in the inverse order of alienation arises from the obligation of the common grantor, as against the various grantees, to pay off the mortgage, it does not arise when no such obligation exists."

Even if that distinction is sound, which we do not deem necessary to discuss, it is unimportant in this case because the common grantor of the three separate parcels in question as between herself and the successive purchasers had, by her warranty deed, assumed the obligation of protecting them against the lien of the annuities. We see no reason why the principle of liability in the inverse order of alienation applicable as between mortgagor and subsequent successive purchasers should not be applicable to a case like this where a lien is created by the will of the ancestor of the grantor, which, so far as successive purchasers of the land subject to the lien are concerned, the grantor was bound to discharge.

Second. The manifest equity of the situation relieved the lands of Wilson and Herdlichtka from any liability for the discharge of the lien of the annuities. Primarily the duty of securing that discharge rested on the grantor under her covenant against incumbrances. She had received the full purchase price of $6,000 from each of the other two purchasers, Wilson and Herdlichtka, and had received only $2,500 of that price from Williams. He still owed her or her son, the complainant, who stood in her shoes, the sum of $3,500 on account of the purchase price of his land, and had necessarily expended that sum in relieving it from the lien of the annuities. The appropriation of that unpaid purchase money to the discharge of the incumbrance on the land purchased by the three successive purchasers is, in our opinion, a most obvious and equitable disposition of it. Williams, by paying it to release the incumbrance, with his original cash payment of $2,500, paid the exact sum of $6,000 for his land which he agreed to pay, and which Wilson and Herdlichtka agreed to pay and had paid for an unincumbered title to their lands. If Wilson or Herdlichtka should be required to pay any portion of the money needed to pay off the annuities, they would pay correspondingly more than $6,000 which they agreed to pay for a good title, and, if Williams should get any aid from them in paying off the annuities, he would pay less than he agreed to pay for his land. After allowing the $3,500 paid by Williams to be employed in reduction of the sum due on the note, Mrs. Neely has only performed her contract to give all an unincumbered title. The transaction amounts merely to deducting from the purchase price the value of the defect in the title warranted, and in this way the rights of all are recognized and respected and the original contracts performed according to their tenor and effect. Every equitable consideration requires

149 F.—5

that this unpaid portion of the purchase price should be controlled and disposed of so as, if possible, consistently with the rights of all others to protect the lands of Wilson and Herdlichtka from liability by reason of the incumbrance. Wynn v. Carter, 20 Wis. 107, 111.

It follows from what has been said that, as between Williams and Wilson and Herdlichtka, there was no liability on the part of the latter to contribute to the fund required to remove the lien of the annuities, and that the former had no right of contribution against the latter for what he did pay for that purpose. As a necessary consequence the supposed existence of that right does not affect Williams' right, as determined by the former appeal, to diminish the amount of liability on the note by the full amount paid to secure a release of the annuity, and as a further necessary consequence any pretended release of that right by Williams did not deprive defendant of any possible recourse against Wilson or Herdlichtka or otherwise injuriously affect him.

It is insisted by defendant that he is entitled to recover on his note the difference between its face, with interest added, and the amount paid by Williams to secure the release of the annuities. In other words, that he ought to be allowed interest on the Williams note from its maturity to the present time. The note by its terms was payable at the First National Bank of Humbolt, Neb. The evidence shows and the trial court found that complainants upon the maturity of the note deposited the amount due thereon at the bank, with directions to pay the note upon its presentment and upon a proper release of his land from the lien of the annuities, and that it has remained there for defendant's acceptance on the condition imposed. The contention is that the tender, being conditional, was ineffective to stop the running of interest. This is not so. The grantor had failed to convey to Williams the title agreed to be conveyed for the consideration agreed to be taken. It was held on the former appeal that this constituted a failure of consideration for the note, that the covenant in the deed and the promise in the note were mutual and dependent, and that the performance of one was the consideration and condition of the promise of the other. This doctrine necessarily leads to the conclusion that the note was not enforceable as long as the title remained defective. The note was due and payable from Williams only upon a discharge of the lien of the annuities by Neely.

A tender in payment of an unconditional demand must, of course, be unconditional. That is elementary. But the note involved in this case being due conditionally, the tender could be made on like condition, and when so made was good and effective to prevent the running of interest. Comstock v. Lager, 78 Mo. App. 390; Clark v. Weis, 87 Ill. 438, 29 Am. Rep. 60; Wheelock v. Tanner, 39 N. Y. 481; Cass v. Higenbotam, 100 N. Y. 248, 3 N. E. 189; Frenzer v. Dufrene, 58 Neb. 433, 78 N. W. 719; Johnson v. Cranage, 45 Mich. 14, 7 N. W. 188; Kennedy v. Moore, 91 Iowa, 39, 58 N. W. 1066.

These conclusions, without a consideration of several other questions presented in argument and brief, being in harmony with the conclusion reached by the Circuit Court, necessarily lead to an affirmance of its decree. It is accordingly so ordered.

HOOK, Circuit Judge, dissents.