## DREXLER v. COMMERCIAL SAVINGS BANK.

(Circuit Court of Appeals, Eighth Circuit. March 27, 1925.)

No. 6825.

1. **Courts** ⟨⟩370—Federal Court will not construe state statute in advance of construction by state court, if it can be avoided.

Construction of state statute is initially for state Supreme Court, and in advance of such construction federal courts will not construe state statute unless necessary to determination of case.

2. **Appeal and error** ⟨⟩931(1), 1009(3)—Finding of chancellor on contradictory evidence not disturbed, except for error of law or serious mistake of fact.

Finding of a chancellor on contradictory evidence is presumptively correct, and will not be disturbed, except for obvious error of law or serious mistake of fact.

3. **Mortgages** ⟨⟩290—Sale in inverse order of alienation decreed only where not in contravention of equity and justice.

Sale of mortgaged property in inverse order of alienation will be decreed only where not contravening natural equity and justice.

4. **Mortgages** ⟨⟩290—Sale in inverse order of alienation not decreed where not all lands and persons affected were before the court.

In mortgage foreclosure suit, one to whom a mortgagor had alienated portion of mort-

gaged property *held* not entitled to decree for sale in inverse order of alienation, where not all of lands affected nor all parties whose rights were involved were before the court.

**5. Appeal and error ⚖═►1054(3)—Admission of improper evidence in case tried without jury, not reversible where judgment sustained by competent evidence.**

In an equity case, and ordinarily in any case tried without jury, admission of irrelevant, incompetent, and immaterial evidence is not reversible error, where in the case there. is enough competent evidence to sustain the judgment.

Appeal from the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

Bill in equity by the Commercial Savings Bank against C. A. Drexler for foreclosure of mortgage. Decree for plaintiff, and defendant appeals. Affirmed.

J. G. Bradford, of Sioux Falls, S. D. (James A. Lyons, of Howard, S. D., and Davis, Lyon & Bradford, of Sioux Falls, S. D., on the brief), for appellant.

John Brown McCrary, of Carroll, Iowa (John E. Haltigan, of Carroll, Iowa, and Kirby, Kirby & Kirby, of Sioux Falls, S. D., on the brief), for appellee.

Before LEWIS, Circuit Judge, and VAN VALKENBURGH and FARIS, District Judges.

FARIS, District Judge. This action was begun below by appellee, to foreclose a mortgage upon certain land situate in Miner county, S. D. Defendant Drexler, sole defendant below and appellant here, set up by his answer that he was an innocent, subsequent purchaser for value of the lands in dispute, without actual notice of the mortgage herein sought to be foreclosed, and that no constructive notice was comported by the recording of this mortgage; because such mortgage did not contain therein the post office address of the mortgagee, as required by a local statute.

Defendant further set up by his answer that the mortgage included, in addition to the lands in controversy, certain other lands of the mortgagor situate, respectively, in Carroll county, Iowa, and in Mellette county, S. D.; that these latter lands were in value more than sufficient to pay the mortgage debt due to the bank; and thereupon prayed, by way of alternative and affirmative relief, that the court order that the sale of these lands be made on foreclosure, if foreclosure should be decreed, in the inverse order of alienation, under the equitable doctrine cognate to that of the marshalling of assets. The court found for the bank, and decreed a foreclosure and ordered a sale; but made no express ruling on the matter of marshalling securities, thus, by inference, denying this relief. Defendant Drexler thereupon appealed in conventional manner and form.

Drexler, so called hereinafter, sets up 46 assignments of error. These may be reduced to three: (a) Did the evidence under the law show that Drexler had either actual or constructive notice of the mortgage to the bank?

(b) Did the court err in failing to order the bank to sell the three several tracts of land in the inverse order of alienation? And (c) did the court err in the admission of incompetent evidence? The mortgagor, since executing the mortgage, has sold and conveyed all lands embraced in the mortgage; first the tract here in dispute to appellant, and subsequently, the two remaining tracts to his father, who reconveyed them to the wife of the mortgagor.

The mortgage sought to be foreclosed was executed by one Lemker to appellee, Commercial Savings Bank, of Carroll County, Iowa, on the 14th day of June, 1921, to secure the payment of a note for $14,000 bearing even date. This mortgage, as correctly pleaded by Drexler, conveyed to the bank, in addition to the land here in controversy, a parcel of land in Carroll county, Iowa, and another parcel in Mellette county, S. D. It was filed for record in the office of the register of deeds for Miner county, S. D., on the 1st day of October, 1921, and copied in full, on such records, some eight months before the date of the conveyance from Lemker to Drexler. But since a local statute of South Dakota provides that "the mortgagee of every real estate mortgage shall state therein his post office address before recording the same" (section 1570, Rev. Code S. D. 1919), and since another statute of South Dakota provides that "no mortgage shall be received for record by any register of deeds which does not contain the post office address of the mortgagee" (section 5916, Rev. Code S. D. 1919), it is contended by Drexler that, although this mortgage was spread upon the proper records of Miner county, eight months before he bought the land, such record, in view of the above statutes, did not comport constructive notice to him.

[1, 2] The point is an interesting one, especially in view of the fact that this mortgage bore upon the back thereof an indorsement which did give the post office address of the mortgagee. But in view of the fact that the construction of sections 1570 and 5916, Rev. Code of South Dakota, is initially for the

Supreme Court of that state, and since that court has never construed these sections, we ought not to trespass upon the prerogative of that court if it can be avoided, as it can in this case. This is so, for the reason that another statute of South Dakota provides that "an unrecorded instrument is valid as between the parties thereto and those who have notice thereof." Section 990, p. 183, Comp. Laws S. D. 1913. Upon the question of whether Drexler had actual notice of this mortgage when he bought the land, the trial court found for the bank and against Drexler. Confessedly, the evidence upon the point was contradictory; but the finding of the trial court seems to be fully warranted by the weight of the evidence even, and so recourse, in any event, may be had to the rule that when a chancellor has considered contradictory evidence and has bottomed his findings thereon, such findings are to be deemed by this court presumptively correct, and they will not be disturbed or the case reversed, save in the presence of an obvious error of law, or a serious mistake of fact. Roswell Drainage Dist. v. Dickey (C. C. A.) 292 F. loc. cit. 31.

The second point reserved for discussion is a more involved and difficult one. Drexler contends, upon the facts and in view of his plea for affirmative relief, set up in the alternative in his answer, that the decree of the court should have provided that the bank, as a condition precedent to the granting of the equity it asked, ought to have been compelled by the terms of the decree to resort for payment of its mortgage debt to the three several tracts of lands embraced in the mortgage in the inverse order of alienation thereof by Lemker, the mortgagor.

Of course, it is almost, if not quite, a maxim of the law that courts will not do vain and futile things. Concretely, that if prior foreclosures and sales of the two other tracts will not afford some measure of relief to Drexler, he may not ask for foreclosures in the inverse order of alienation. But here Drexler's plea for affirmative relief avers that the two tracts last, in point of time, conveyed by Lemker by mesne conveyances to his wife, are in value more than sufficient to pay the mortgage debt to the bank in full. The cashier of the bank, than whom no one should be better informed, or be in better position to bind the bank by his statements, says upon this question: "The Carroll county land ought to bring enough to protect us, and then we would have the half section of land out in Mellette county that is clear." Germane to this point this witness also said: "We have commenced no foreclosure pro-

ceedings against the Carroll county, or Mellette county land; thought we would take one at a time." Obviously, if the Carroll county, Iowa, land should on foreclosure and sale prove sufficient to pay the bank's debt, and thus leave the other tract of South Dakota land clear, no occasion would ever arise to call on the Miner county land, here in controversy, to respond for any sum. But all this conceded, is Drexler entitled to have the relief prayed for?

The existence of the general equitable doctrine here invoked by Drexler is well-settled. 27 Cyc. 1367; 2 Jones on Mortgages (5th Ed.) 1630; Orvis v. Powell, 98 U. S. 176, 25 L. Ed. 238; Bank v. Creswell, 100 U. S. 630, 25 L. Ed. 713; 18 R. C. L. 468; Burpee v. Parker, 24 Vt. 567; Newby v. Fox, 90 Kan. 317, 133 P. 890, 47 L. R. A. (N. S.) 302; Gilliam v. McCormack, 85 Tenn. 597, 4 S. W. 521; Lewis v. United States, 92 U. S. 618, 23 L. Ed. 513; Neely v. Williams, 149 F. 60, 79 C. C. A. 82, and cases cited. Certainly, this is the case inter sese as regards subsequent purchasers with notice, of separate parcel of the lands embraced in the mortgage, and within limits and subject to exceptions, it is the case as to the first mortgagee. 18 R. C. L. 468. In such first mentioned case, since the mortgagor is liable for the whole debt secured by the mortgage, a sale by him of a part of the lands has the effect to shift the initial burden of liability from the part thus sold to that portion, or parcel still remaining in his hands; if, and in the event, that such remaining parcels shall be sufficient to pay the mortgage debt. Likewise, upon a sale of a second parcel of the mortgaged land, the primary burden to pay the mortgage debt shifts conditionally to those lands yet remaining in the hands of the mortgagor. So that, if all of the mortgaged lands are sold by the mortgagor, the vendees of the several tracts are, inter sese liable to pay the mortgage debt in the inverse order of alienation. He who is, as to his grant, first in point of time, becomes last in point of liability to have his lands subjected to sale to pay the mortgage debt.

But this is not a case between a grantee of a part of the mortgaged premises and the mortgagor. The suit here is between the mortgagee of three separate parcels of land and the vendee of one of those parcels, who bought by warranty deed, and as we have already ruled, with notice of the mortgage. Neither the mortgagor nor his vendees of subsequent parcels are parties to the action. In such case, is the mortgagee compellable to undergo the cost and put itself to the delay, labor, and expense of bringing a sep-

arate action in another state as the price of getting only that to which it is entitled, to wit, payment of the money justly due to it?

There are cases which hold that where all of the parties are before the court, and where all of the lands are involved in a single suit, of course in the same jurisdiction, and where justice and equity require it, a decree may be entered, requiring the mortgagee, who seeks foreclosure, to resort first to the parcels last aliened by the mortgagor. A few cases, beyond the pale of the weight of authority, however, seem to hold that the mortgagee may be compelled to go into other states and jurisdictions and there exhaust his remedy against the lands last aliened by the mortgagor before he is entitled to proceed against those first aliened. Blight's Heirs v. Bank's Ex'rs, 6 T. B. Mon. (Ky.) 192, 17 Am. Dec. 136; York, etc., Co. v. Associates etc., Hopk., Ch. (N. Y.) 460. But, as forecast, the weight of the authorities is against this latter view, not only in the federal courts, but in the several states, Lewis v. United States, 92 U. S. loc. cit. 623, 23 L. Ed. 513; Sternburger v. Sussman, 69 N. J. Eq. 199, 60 Atl. 195; Aldrich v. Cooper, 2 Lead. Cas. Eq. 276; Shedd v. Bank, 32 Vt. 709; Farwell v. Biglow, 112 Mich. 285, 70 N. W. 579; Denham v. Williams, 39 Ga. 312; Dodds v. Snyder, 44 Ill. 53; Herriman v. Skillman, 33 Barb. (N. Y.) 378; Kyner v. Kyner, 6 Watts. (Pa.) 221; Walker v. Covar, 2 S. C. 16; Gilliam v. McCormack, 85 Tenn. 597, 4 S. W. 521.

In the case of Lewis v. United States, supra, at page 623, the Supreme Court of the United States said, upon the germane question of marshalling assets this:

"A court of equity will not entertain the question of marshalling assets, unless both funds are within the jurisdiction and control of the court."

Likewise, in a similar case and on a point therein wholly analogous to that here involved Judge Lurton (afterwards Mr. Justice Lurton), speaking for the Supreme Court of Tennessee, in the case of Gilliam v. McCormack, supra, 85 Tenn. at page 611, 4 S. W. at page 525, said:

"These cases, and the sound equity upon which they are * * * founded, sustain the proposition that marshalling is a pure equity, and does not at all rest upon contract, and will not be enforced to the prejudice of either the dominant creditor, or third persons, or even so as to do an injustice to the debtor. We are not disposed to extend the doctrine so as to affect the equities or legal rights of third persons."

[3] The cases and the above excerpts foreshadow the true limits of this doctrine, the existence of which, as said, is well settled. These limits of application in a case of the mortgage of lands are that (a) where a mortgagee holds a mortgage on more than one parcel of land, or a single tract capable of division, and (b) parts or parcels thereof are thereafter conveyed by the mortgagor to third persons with notice and (semble) with warranty of title, and (c) an action to foreclose is brought by the mortgagee, wherein all persons interested in the several tracts, or parts, are parties, and (d) all the lands to be affected are involved, the court will decree a sale of the parcels in the inverse order of alienation, (e) if such a decree will not do injustice to the mortgagee, to the debtor, to the several alienees, or to third persons. In short, as to the last-named condition, equitable reasons must be present in such wise that the application and enforcement of the doctrine will not contravene natural equity and justice. Guion v. Knapp, 6 Paige (N. Y.) 35, 29 Am. Dec. 741; Aderholt v. Henry, 87 Ala. 415, 6 So. 625, 6 L. R. A. 451; Chancellor of New Jersey v. Towell, 80 N. J. Eq. 223, 82 Atl. 861, 39 L. R. A. (N. S.) 359, Ann. Cas. 1914A, 710; Patty v. Pease, 8 Paige (N. Y.) 277, 35 Am. Dec. 683; Howser v. Cruikshank, 122 Ala. 256, 25 So. 206, 82 Am. St. Rep. 76; 18 R. C. L. 474. This all seems true, because, as said by Judge Lurton, the doctrine is a pure equity, wholly apart from contract, and therefore one which ought not to be applied in any case, wherein inequitable results will follow its application. Indeed, there is quite respectable authority for the view that the doctrine of inverse order of alienation does not at all affect the mortgagee, who may proceed to collect his debt in any way, which is most to his interest. Palmer v. Snell, 111 Ill. 161; Waters v. Hubbard, 44 Conn. 340; Rugg v. Brainerd, 57 Vt. 364; Hawhe v. Snydaker, 86 Ill. 197. But the trend of the later cases is to the effect that even the first mortgagee is bound in a proper case by this doctrine. 18 R. C. L. 468, and cases cited. Some few of the cases hold that the conveyance by the mortgagor need not be by warranty deed. Gray v. Lumber Co., 128 Mich. 427, 87 N. W. 376, 54 L. R. A. 731; Howser v. Cruikshank, 122 Ala. 256, 25 So. 206, 82 Am. St. Rep. 76. But since the conveyance to Drexler was by such deed, we need not rule the point, and so pass it as not necessary for decision here.

[4] The recited facts in the instant case clearly disclose that neither all of the lands

to be affected nor all parties whose rights are involved were before the court below, and that delay, and expense, inevitably and possibly, loss, will accrue to the mortgagee bank if the doctrine contended for should be applied here. It is, moreover, suggested by learned counsel for the mortgagee that various remedies—some in law and some in equity—were and are open to Drexler, the use of which by him will save or would have saved him from loss. Touching this point it is not necessary to rule, and as to these things Drexler may proceed as he is advised. We content ourselves in saying that under the facts and situation disclosed, this was not a proper case in which to apply the doctrine of marshalling securities.

[5] Complaint is also made that the trial court erred in admitting in evidence, over Drexler's objection, the ultimate fact that a letter addressed to the bank at the county only of its location, and without naming any post office, had been received by the addressee. This point went to a question which we have already said should be left for decision to the Supreme Court of South Dakota, and on which, since it was not necessary to a decision, we declined to rule. Besides, this case was on the equity side, and the law is settled that in such a case, as also ordinarily in any case tried by the court without a jury, the admission of irrelevant, incompetent, and immaterial evidence is not reversible error, where there is in the case enough competent evidence to sustain the judgment rendered. Bodkin v. Edwards (C. C. A.) 265 F. 621; Coles v. Denslow (C. C. A.) 270 F. 23; Shearer v. Farmers', etc., Co. (C. C. A.) 262 F. 861; Hall v. United States (C. C. A.) 267 F. 795.

It is, however, conceded by the bank that the amount, found to be due it, exceeded by the sum of $1,120 the amount actually due.

So, credit should be given for the above sum, as of the date of the rendition of the judgment and the decree thus modified is affirmed.